[L. A. No. 21978. In Bank. Nov. 2, 1951.]

MIGUEL GUERRA et al., Appellants, v. ERNIE LEE BROOKS, Respondent.

Werdel & Di Giorgio and V. P. Di Giorgio for Appellants.

Johnston, Baker & Palmer, Stephen Wall and Claude F. Baker for Respondent.

SPENCE, J.—This is an action for damages arising out of a collision between an automobile driven by defendant and a motorcycle operated by plaintiff Samuel Guerra, a minor 20 years of age. A jury returned a verdict in favor of defendant, and from the judgment entered thereon plaintiffs appeal. As ground for reversal, plaintiffs contend that the trial court committed prejudicial error in refusing to admit certain evidence as to speed restriction signs and to give certain instruc-

tions on that subject. The condition of the record sustains plaintiffs' position.

The accident occurred at about 8:30 p.m. on December 29, 1948, on Highway No. 466 (Edison Highway) some 3 miles east of the city of Bakersfield. Plaintiff Samuel Guerra was driving his motorcycle easterly in the south lane and defendant was driving his Ford automobile westerly in the north lane. The paved portion of the highway is about 28 feet wide, with 12 feet of shoulder on either side. A railway track runs parallel to the north side of the highway, and on the south side is a built-up section, including Andrews' Market, which faces the roadway and which is some 500 feet east of the highway's intersection with Mount Vernon Street. It was a dark, misty night. In order to enter the market on the opposite side of the highway, defendant made a left turn across the lane in which Guerra was approaching, and his automobile and the oncoming motorcycle collided.

Defendant testified that as he was drawing near the market with the intent of stopping there for some shopping, he was traveling about 25 miles per hour; that he gave a left-turn hand signal for about 150 feet; that by the aid of his own headlights and the lights reflected from the market, he could see a distance of 250 to 300 feet down the road; that he carefully scanned the road in both directions, and when he saw that there were no cars or car lights either in his pathway or behind him to create a hazard, he slowed his automobile to 5 miles per hour and began his turn left; that when partially across the center line, he, for the first time, saw the motorcycle "just the instant before it hit"; that he observed no lights on it; that the motorcycle struck his automobile near the radiator, and the rider (Guerra) was thrown into the air, landing on the soft shoulder on the south side of the highway; that the rider got to his feet, returned to the motorcycle and shut off the motor. Defendant's wife, who was riding in the front seat, corroborated her husband's testimony.

Plaintiff Samuel Guerra testified that he was traveling in the center of the south lane about 40 to 45 miles per hour as he saw the lights of defendant's automobile approaching in the north lane; that he paid no attention to the car until it turned sharply in front of him into the south lane which he was traveling; that he did not observe any signal being made by the driver of the car; that the lights of his motorcycle were then burning; that he had "flicked" them from low to

high a short distance down the highway; that he did not have the opportunity to swerve or slow down before the collision; that after being thrown to the ground from the force of the impact, he walked over to the motorcycle, turned off the motor and "put the parking lights on"; that his broken left arm gave him great pain, and that he was thereafter taken to the hospital.

A highway patrolman who arrived soon after the accident testified that he "could not positively state" whether the lights were on or off the motorcycle when he reached the scene of the collision. Without detailing the testimony of other witnesses on this point, suffice it to say that the record shows a sharp conflict as to their observations of the lighting on the motorcycle upon their arrival at the scene following the crash.

Defendant not only denied negligence on his part but pleaded that the accident was caused by the contributory negligence of Guerra in his operation of the motorcycle. As the above review discloses with regard to two of the main evidentiary issues in dispute—whether the lights were sufficiently illuminated on the motorcycle just prior to the accident and whether defendant made a left-turn signal which was visible to Guerra had he looked—the record presents a typical fact case in which the evidence, and the reasonable inferences therefrom, would support a verdict either way. But the propriety of plaintiffs' objection to the considerations which may have entered into the jury's verdict in favor of defendant stems from another issue raised in the case, the nature of the district where the accident occurred—whether such stretch of highway was or was not within a so-called business district, whether the area was or was not signposted as required by section 468 of the Vehicle Code, and what prima facie speed limit should apply there.

The highway patrolman who made the report of the accident stated therein that the district had a permissible 55-mile per hour speed limit. He testified that in the course of patrolling that portion of the highway, he had noticed "several little businesses fronting on Edison Highway" on the south side but that he had never seen "a speed reduction sign anywhere in that highway in that vicinity." To the point of the materiality of speed restriction signs affecting the area in question, plaintiffs made the following offer of proof to the court: that the place of the accident was between two signs, both on the north side of the highway and visible to persons traveling in a westerly direction, one sign being about a mile east of the

place of accident reading "End of 25-mile zone" and the other sign being about 2½ miles west of the place of accident reading "25 miles" for the approach into Bakersfield; and accordingly the intervening area, a stretch of highway with no speed restriction signs applicable to westerly travelers, was a 55-mile per hour zone. The court sustained defendant's objection to this evidence. Thereupon defendant produced a witness who had prepared a plat showing the places of business on the south side of Edison Highway easterly and westerly of the Andrews' Market as of December 28, 1948 (the day before the accident), and who testified that more than 50 per cent of that district was occupied by business structures, so as to satisfy the statutory definition. (Veh. Code, § 89.) This latter evidence was introduced by defendant for the apparent purpose of showing that the prima facie speed limit in that area was 25 miles per hour.

In its charge to the jury, the trial court read section 89 of the Vehicle Code, defining a business district, and gave a speed limit instruction in the language of sections 510 and 511 of said code, respectively setting forth (1) the "basic speed law" for reasonable and prudent travel on a highway; and (2) the "prima facie speed limits," with "twenty-five miles per hour" applicable for "any business or residence district" and "fifty-five miles per hour" applicable "under all other conditions unless a different speed is established as provided in [the] code and signs are in place giving notice thereof." No specific instruction was given as to the requirements of the Vehicle Code pertaining to the erection and maintenance of limited or permissible speed signs. However, plaintiff offered (1) specific instructions as to signposting, in the language of sections 465, 466, 468, 468.1 and 759 of the code; and (2) a further instruction on the relation of signposting to the applicable prima facie speed limit.

Plaintiffs complain of the trial court's rejection of their offer of proof and proffered instructions with respect to the signposting.

In the opinion this day filed in *Reynolds* v. *Filomeo*, S.F. No. 18398, *ante*, p. 5 [236 P.2d 801], consideration was given to the relation of signposting to the prima facie speed limits prescribed in section 511 of the Vehicle Code. The conclusion was there reached that the 1947 amendment to section 758 of the Vehicle Code made no change in the substantive law relating to prima facie speed limits and that "now, as before, no area has the prima facie speed limit of a business

or residence district unless it is signposted." (*Ante*, p. 13.)
 It therefore follows that the trial court erred in excluding evidence of the lack of signposting; and that the trial court further erred in failing to give some specific instruction on the relation of signposting to the prima facie speed limits prescribed by section 511 of the Vehicle Code. Upon the evidence admitted and the instructions given, the jury may well have believed that the lack of signposting had no bearing upon the applicable prima facie speed limit, and may well have rendered a verdict in favor of defendant upon the theory that plaintiff Samuel Guerra was guilty of a violation of section 511 of the Vehicle Code solely because of his admitted speed in excess of 25 miles per hour. Under these circumstances, the above-mentioned errors of the trial court must be held to have been prejudicial to plaintiffs.

The judgment is reversed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.