[Civ. No. 19453.   Second Dist., Div. One.   June 29, 1953.]

HENRY D. FREELAND et al., Respondents, v. JEWEL TEA COMPANY (a Corporation) et al., Appellants.

George A. Kuittinen for Appellants.

Cecil L. Lacy and Parker, Stanbury, Reese & McGee for Respondents.

DRAPEAU, J.—Late in the afternoon of January 24, 1951, defendant Besley, driving defendant Jewel Tea Company's truck, was selling its products to customers residing in the thirteen thousandth block of Lefloss Avenue in Norwalk. At the north end of this block the street is dead-ended. The truck was parked on the east side of the street facing the dead-end. As a result, defendant Besley had to turn around in the street to make his exit. Because two other cars were parked directly in front of the truck, he backed the truck

from its parked position. He then proceeded forward, turning left across the street into a driveway on the west side adjacent to plaintiffs' residence. As he was slowly backing the truck out of the driveway, the left rear wheel struck Karen Freeland, the 2½-year-old daughter of the plaintiffs, causing her death.

By the instant action for wrongful death, the parents sought damages from the owner of the truck and from the driver.

The jury returned its verdict in favor of plaintiffs. The trial court denied a motion for new trial. From the judgment entered pursuant to the jury's verdict, defendants appeal.

It is here urged that the evidence established without conflict that the child was holding on to the truck at the time of the accident. And, as a result, she was a trespasser toward whom appellants, unaware of her presence, owed no duty of care.

It was established that many children living in this block habitually played in and about this dead-end street.

Defendant Besley testified that usually there were around 20 children playing in the street. On the day in question there were 8 to 12 children varying in age from 2 to 10 or 12 years playing in the parking way, around and in his truck. And because he had to back his truck before he could turn it, he cautioned every one of the children on the east side of the street to get on the parking way and off the street before he backed. After backing, he drove ahead and turned almost straight across the street into the driveway heretofore mentioned. He stayed in the driveway "just long enough to engage the truck in reverse gear and proceed backwards." Before he backed from the driveway, he checked in the right rearview mirror, also on the left side and stuck his head out the left side of the truck to see that everything was clear. He saw only the children still standing in the group on the east side of the street where he had left them on the parkway.

He did not sound his horn and brought his truck to a stop when he heard someone scream.

There were two eyewitnesses to the accident: Mrs. Foster and Mrs. Dumbleton, neighbors living on the east side of the block in question.

Mrs. Foster testified that she was standing on the lawn in front of her house talking to Mrs. Dumbleton. At that time 10 or 12 children were playing in the area between her house and the barricades at the north end of the street. She first

noticed Karen playing with her older sister on the lawn in front of their parents' home on the west side of the street. Later, when the truck moved across the street from east to west, the two sisters were following it closely. Karen "trotted along behind the truck . . . her hands on the bumper, jumping up and down, playing," her feet on the ground. When the truck got into the driveway "she raised her little hands off and we thought she was going to move to get out of the way, but she didn't fast enough." The truck paused just long enough to shift gears. It moved backward "a very few feet"; Mr. Besley "had to drive a little bit." As the truck started, the witness screamed. "The child was hit in the street . . . by the rear end of the truck."

Mrs. Dumbleton testified that she saw the truck parked on the east side of the street; that when Mr. Besley started the truck, Karen "took hold but when he started to move away she let loose . . .. And he went across the street and she followed behind but she did not have hold of the truck while he was going across." When the truck got into the driveway, "She was behind it. Not directly behind it. . . . she was quite a little ways from his truck while he was in the driveway—a few feet.

"Q. Yes. Mrs. Dumbleton, I don't want to persuade you to describe anything that isn't clear in your mind, but if you did notice where the little girl was while the truck was in the driveway and before it started. to back out, it would be helpful if you would tell us. If you didn't notice, of course, your answer is 'I don't know.' Did you notice where Karen was at that time?

"A. Well, you have me just a little bit confused, but the only way I can explain it, as he pulled across the street they were still at that time on our side of the street, but as he got across into this driveway they ran across the street.

"Q. All right. A. And as he was backing out, just as he was backing out, real slow, she came up right behind and grabbed hold of his bumper. . . .

"Q. Did you happen to notice, one way or the other, where the little girl who was killed was at the moment when the truck started to back up?

"A. When he started to back up she was, I would say, approximately out here in the middle of the street yet."

This witness also testified that most of the truck was in the driveway before it started to back.

In support of their stand, appellants rely upon the statement

of Mrs. Dumbleton that the child grabbed hold of the bumper as the truck started to back out of the driveway. They ignore Mrs. Foster's testimony that the child removed her hands from the bumper "when the truck got into the driveway"; that Mr. Besley "had to drive a little bit" before reaching the child and that he drove "a very few feet" before the truck hit her. They also ignore Mrs. Dumbleton's testimony that most of the truck was in the driveway before Mr. Besley started to back, and that when he started backing the child was approximately out in the middle of the street.

This is an apt illustration of the inconsistencies and discrepancies usually incident to the stories of eyewitnesses to any exciting event.

■ "It is the duty of the trier of facts to reconcile, if possible, any apparent conflict, whether such conflict is developed upon the whole case or in the testimony of an individual witness, and to give effect to all the evidence, when the nature of the case will admit of such a disposition, or, if the conflict is irreconcilable, to affix their own value to the contradictory evidence. . . .

■ "It is a cardinal doctrine often enunciated, that where, upon a question of fact, the testimony in the court below involves a substantial conflict, the action of the court below will not be disturbed. It is to be presumed that the trial judge reconciled and accounted for to his own satisfaction any and all inconsistencies which might be made to appear in the testimony. Wherever there is a fair and reasonable amount of evidence to support the finding of a jury, it will not be disturbed by the appellate court, though in its opinion it is against the preponderance of evidence." (10 Cal.Jur., pp. 1171, 1172, §§ 382, 383, and authorities there cited. See, also, *Hodges* v. *Porikos*, 88 Cal.App.2d 238, 245 [198 P.2d 577].)

■ It is clear from the evidence that Karen, the deceased child, and her older sister were running after the truck from the time it left the east side of the street, and that from then until the accident occurred, appellant driver proceeded forward, and without warning, backed the truck into a public street where he knew many children were playing.

In the circumstances, negligence of the driver and negligent conduct of the child became questions for the jury to decide.

■ In *Conroy* v. *Perez*, 64 Cal.App.2d 217, 224 [148 P.2d 680], it was stated: "As the courts have frequently said, it is ordinarily necessary to exercise greater care for the protection and safety of young children than for adult persons possess-

ing normal and mature faculties. ▆ Their conduct is unpredictable and one operating a motor vehicle should anticipate their thoughtlessness and impulsiveness. (*Shannon* v. *Central-Gaither U. School Dist.*, 133 Cal.App. 124 [23 P.2d 769].) ▆ The presence of children is in itself a warning requiring the exercise of care for their safety. (*Seperman* v. *Lyon Fire Proof Storage Co.*, 97 Cal.App. 654 [275 P. 980].) ▆ Moreover, if the evidence shows that a driver has knowledge of the presence of children he may be held to have been responsible although it appears that he did not see the injured child in time to prevent the injury. (See 2 Cal.Jur. Ten-Yr. Supp., p. 454.)''

Appellants assert that the driver of the truck was under no duty to sound the horn for the reason that, ''The child was a trespasser, hence the defendants owed no duty 'except not to inflict wanton or wilful injury and to use ordinary care after he is seen': *Wilson* v. *City of Long Beach*, 71 Cal.App.2d 235, 240 [162 P.2d 658, 163 P.2d 501].''

Appellant further argues that the instruction to the jury regarding the use of the horn was misleading and prejudicial. ▆ Under the evidence presented, it was for the jury to decide if the child was a trespasser. ▆ It was also a question of fact whether a warning was necessary. Section 543 of the Vehicle Code provides that no person shall back a vehicle on a highway unless and until such movement can be made with reasonable safety.

▆ The instruction complained of reads: ''You are instructed that Section 671 (b) of the Vehicle Code provides as follows:

'' 'The driver of a motor vehicle when reasonably necessary to insure safe operation shall give audible warning with his horn. Such horn shall not otherwise be used.'

''It was therefore the duty of the defendant driver to exercise ordinary care to determine whether the circumstances were such that the sounding of his horn was necessary for safe operation.''

The instruction correctly states the law, was applicable to the issues presented by the pleadings and raised by the evidence; consequently it was not prejudicial.

The evidence presented amply supports the jury's verdict and the judgment. No errors appear in the record.

For the reasons stated, the judgment is affirmed.

White, P. J., and Doran, J., concurred.