[Civ. No. 5197.   Fourth Dist.   Aug. 29, 1956.]

MARY ABBETH GAVIN, a Minor, etc., et al., Appellants, v. GERTRUDE WATT et al., Respondents.

*Assigned by Chairman of Judicial Council.

Myers, Martin, Karpinski & Dattan for Appellants.

Gray, Cary, Ames & Frye and Higgs, Fletcher & Mack for Respondents.

BARNARD, P. J.—This is an action for damages for injuries suffered by the minor plaintiff when she was hit by an automobile, and for medical expenses incurred by her father. A jury returned a verdict in favor of the defendants and the plaintiffs have appealed from the judgment, with a purported appeal from an order denying their motion for a new trial.

The accident happened on March 4, 1954, near the intersection of Fourth Street and "F" Street in the village of Encinitas. Fourth Street runs north and south and "F" Street runs east and west. The traveled portions of both streets were covered with black top 30 feet wide, and there were 10-foot dirt shoulders on each side of Fourth Street and 5-foot dirt shoulders on each side of "F" Street. There was a school yard on Fourth Street 100 feet north of the north line of "F" Street. There was a row of bushy cypress trees along the south line of the grandmother's property, being the north line of "F" Street. "F" Street dipped slightly downhill as it led east from Fourth Street, and there were sloping banks some three feet high on both sides of "F" Street where sidewalks would ordinarily be.

The child, who was then 22 months old, was staying with her grandmother in a house at the northeast corner of this intersection. A few minutes before the accident the grandmother and the little girl went across to a point on the south edge of "F" Street opposite the rear of the house on the southeast corner of that intersection, where she talked with two retired teachers who lived in that house. While they were talking, the child went back to the north side of "F" Street, went up on the bank there, and a little later returned and was recrossing "F" Street toward her grandmother when the accident happened.

About this time the defendant Watt drove south on Fourth Street past the school yard, turned left at the intersection, and was proceeding east on "F" Street. She was driving at about 15 miles an hour and did not see the child. Her car struck the child at a point about 63 feet east of the east line of Fourth Street and near the point where the grandmother and the other two women were standing. She stopped immediately, and the child was then lying underneath the car near one of the front wheels. The child suffered a broken leg, and at the time of the trial there were severe scars on her leg which the doctors expected to improve in appearance to a greater or less degree.

The defendant testified that as she came to "F" Street she made a slow turn; that she looked and saw as much as could be seen but did not see the child; that as she turned she saw the three women standing there; that the grandmother was standing in the street and the other two were up on the bank; that she saw one of the teachers "put out her hand this way and I thought it was pointing behind me"; that she looked in the rear view mirror and saw no cars anywhere around; that the grandmother went up the bank and stood with the other two women; that "then someone screamed" and the grandmother ran down the bank; and that the grandmother "either hit the car or ran right to the front of the car, and so I stopped immediately."

One of the teachers testified that Mrs. Watt's car was going slowly as it came into the intersection; that when the car was one or two car-lengths from the child the child started across "F" Street; that they waved their arms and shouted; and that the car stopped immediately after it struck the child. She also testified that when the child started "coming back" across the street, "It wasn't a run as we would run, . . . she was sort of skipping along." The grandmother testified that she was talking with the teachers and the child was still across the street when the car driven by Mrs. Watt came; that "we all motioned, I kept thinking the car would stop"; and that when she saw the car was not going to stop and the child had started to wander back "I went in front of the car." The other teacher testified that as they saw Mrs. Watt coming, and having seen the child start out, "we started toward her and raised our hands"; and that when they saw she was not stopping they shouted to her to stop. In a written statement taken on March 19, 1954, this teacher said: "As the car was one or two car lengths away from the child the child started to run south across the street. . . ." Mrs. Watt's defense was based on the contention that her attention was distracted by the signaling or gesturing of the ladies at the side of the road; that she looked to see what was going on, and, while her attention was thus distracted she failed to see the child.

It appears, without reasonable conflict, that Mrs. Watt was not in a "school zone" at the time of the accident, that she was going slowly, that she did not see the child, and that she did not know that this child, or any child, was apt to be in the street in or near that location. The single issue as to the minor's case was as to whether she was negligent in not seeing

the child, especially in view of her attention being diverted by the actions and gestures of the women at the side of the road. This was a factual question for the jury. The elements of space and time were very short, and the jury found by unanimous verdict that she was not negligent. The matter of contributory negligence on the part of the grandmother affected only the father's claim for medical expenses. The sole contention on appeal is that the court erred in giving and refusing to give certain instructions.

It is first contended that there was no proper separation of the cause of action for the child and the cause of action by her father for expenses incurred. It is argued that the giving of two instructions relating to the duty of care of a person in charge of a child on a public street, considered with the failure to instruct the jury that the speed limit is 15 miles per hour when passing a school zone, etc., and that greater care is required for the protection of a young child than for an adult, so confused the jury that it applied the doctrine of contributory negligence to the cause of action for the child, to whom the doctrine is not applicable. It is further argued that, although the jury was given other instructions "which state categorically that a child under two could not be guilty of contributory negligence," it was given so many instructions not truly applicable to the case that it must have been misled as to the manner in which it should treat the case of the child.

The two instructions given, thus referred to, correctly stated the law and were applicable to the father's claim for medical expenses. Of the instructions not given, the one relating to the speed limit while passing a school zone was not applicable under the evidence, and the other was sufficiently covered in other instructions. As is admitted, the court repeatedly instructed the jury that children of this age are not physically or mentally competent to exercise the degree of care that an older person would exercise, and that a child of this age could not be guilty of contributory negligence. From a reading of the instructions as a whole it does not appear reasonably possible that the jury could have been confused or misled in this regard, and the record in no way indicates that the jury may have, in reaching its verdict, attributed contributory negligence to the child.

It is next contended that the court erred in giving an instruction relative to the rights of way of a pedestrian and a vehicle as set forth in subdivision (a) of section 562 of the

Vehicle Code, without also adding the substance of subdivision (b) of that section, providing that this shall not relieve a driver from the duty of exercising due care for the safety of any pedestrian upon a roadway. It is argued that the jury was thus told that Mrs. Watt could operate upon the assumption that pedestrians would cross at crosswalks only, and so long as she drove with that assumption in mind she would not be guilty of negligence; and that while the court was careful to point out the duty of guardians of children it gave this particular instruction without "delineating or intimating what the duty of the driver was."

The instruction thus complained of, after giving the substance of subdivision (a) of section 562 continues: "I mention that not as governing what a child of this age should do, because there are peculiar rules as to that which I will explain, but in connection with what a person of ordinary prudence would expect and anticipate in operating an automobile." In other instructions the court told the jury that a child of this age could not be held to the same standard of care as an adult; and that such a child could not be guilty of contributory negligence, and repeatedly instructed the jury that the driver of an automobile must exercise ordinary care to anticipate the presence of other persons on the highway; that he must at all times keep his automobile under reasonable control and "keep a lookout to observe the possible presence of persons or their property on the highway"; that he may not presume the highway is clear but "is required to keep a lookout to ascertain that it is clear"; and that he must exercise ordinary care at all times while he is driving an automobile. In view of the instructions as a whole, neither error nor prejudice appears in this connection. The duty of a driver to exercise ordinary care under all circumstances and in view of all existing conditions was fully and completely outlined in many instructions, and no prejudice appears in failing to include the substance of subdivision (b) of section 562 in this particular instruction.

Finally, it is argued that the court erred in failing to give an instruction, offered by the appellants, to the effect that it is necessary to exercise greater caution for the protection and safety of a young child than for an adult. It is argued that the court's failure to give this instruction was prejudicially erroneous, since Mrs. Watt knew of the presence of the child, and was aware that persons customarily crossed in the middle of the street and not at crosswalks. Several

cases are cited where the courts have said that it is ordinarily necessary to exercise greater care for the protection and safety of young children than for adult persons, where their presence is known, since their conduct is unpredictable and a driver should anticipate their thoughtlessness and impulsiveness.

There is no evidence in the record that Mrs. Watt knew that this child was on this road, and none which would reasonably indicate that she ought to have known that fact. This instruction was "refused as covered." The court fully and completely instructed the jury as to the duty of the driver of a car to exercise reasonable care under all the circumstances and conditions indicated by the evidence, and each and all of the rejected instructions were sufficiently covered by the instructions which were given. The fact that greater care is necessary where young children are known to be in the road or in a position where they may reasonably be expected to suddenly appear in the road is well known to everyone, including jurors, and no special instructions as to this matter was here necessary. We know of no authority requiring the giving of such an instruction in a case where the driver is not chargeable with knowledge of the probable or possible danger to a child. In view of all of the instructions given the jury must necessarily have considered, in determining the issue of negligence, all of the existing conditions, including the age of the child and Mrs. Watt's explanation of why she did not see the child. Under the circumstances here appearing, it cannot reasonably be held that the giving of this instruction might have affected the verdict.

The appeal from the order is dismissed. The judgment is affirmed.

Mussell, J., and Burch, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.