[S. F. No. 19326. In Bank. Apr. 9, 1957.]

ALBERT WALTER GARIBALDI, a Minor, etc., et al., Appellants, v. BORCHERS BROS. (a Corporation) et al., Respondents.

Bruce F. Allen and Douglas, Zingheim & Allen for Appellants.

William J. Connolly and Donald F. Farbstein for Respondents.

SPENCE, J.—Plaintiffs, father and minor son, appeal from a judgment in favor of defendants in an action for damages for personal injuries sustained by the son when he came in contact with defendants' truck. They maintain that the court committed prejudicial error in instructing the jury. Viewing the evidence in the light most favorable to their contentions, the record does not support their position.

The accident occurred approximately midway between intersections on Sunol Street in San Jose on August 19, 1952, about 10:30 a. m. Sunol Street runs north and south, and is 30 feet wide. There are residences on both sides of the street in this area. At the time of the accident, cars were parked solidly along the west side of Sunol Street, leaving two lanes of traffic open. No parking was permitted on the east side. A dirt strip four feet wide extended between the sidewalk and the curb on this east side.

Plaintiff minor, then 8½ years old, and his 7-year-old sister were walking north on the sidewalk on the east side of the street. Defendants' concrete mixer truck was also

proceeding north on the east side of the street. The driver saw the children as he approached them and he kept them under observation until his truck reached a point about 15 feet south of where they then were, when he looked straight ahead. After he had passed the children he heard a scream and the sound of something hitting the side of the truck. The boy was found lying in the street near the east curb. A mark on the truck indicated that the point of contact was on the right rear mudguard, 12 feet from the front of the truck.

Defendant driver testified that he first observed the children when he was 200 to 250 feet from them; that his view of them was unobstructed; that his speed then was about 20 miles per hour; that there was traffic approaching from the opposite direction; that his truck was proceeding about 3 feet from the east curb; that when about 100 feet from the place of the accident, he reduced his speed to 15 miles per hour; that the children's backs were toward him and they did not look at him at any time; that they were ''on a hop and a skip down the sidewalk''; and that they ''kind of jacked toward the west of the sidewalk.'' He further testified that he did not see the children leave the sidewalk or make any movement indicating that they were going on the street, but he admitted having told the police officer at the scene of the accident that he saw the boy step to the curb. The driver also testified that he did not sound his horn as he approached the children and only ''lightly applied'' the brakes; that it was only after he heard the scream, that he really applied the brakes and stopped ''as quickly as [he] could'' next to the curb.

The boy could not remember the accident. His sister, 9 years old at the time of the trial, testified that she and her brother went from the sidewalk onto the dirt strip, where they waited for one northbound truck to pass, and then ''when the second one (defendants') was coming, my brother started to go out by the curb, and I don't think he saw the truck, he was looking at me, and he told me to get back on the sidewalk, and so I was in the dirt strip and the truck came along and hit him.'' A neighbor testified that while she did not see the boy hit, she had noticed defendants' truck as it passed her house, which was just before the place of the accident; that it swerved toward the east curb because of an oncoming southbound truck; and that she estimated defendants' truck was then going about 30 miles per hour.

Defendants' truck, with its load of concrete, weighed about 15 tons.

At plaintiffs' request, the jury was instructed on the last clear chance doctrine. The formula prescribing the essential conditions for application of that doctrine has been recently restated. (*Brandelius* v. *City & County of San Francisco,* 47 Cal.2d 729, 743 [306 P.2d 432].) Such restatement was based upon the formula appearing in other decisions of this court. (*Daniels* v. *City & County of San Francisco,* 40 Cal.2d 614, 619 [255 P.2d 785]; *Peterson* v. *Burkhalter,* 38 Cal.2d 107, 109-110 [237 P.2d 977]; *Girdner* v. *Union Oil Co.,* 216 Cal. 197, 202 [13 P.2d 915].)

The parties first are in dispute. as to whether the last clear chance doctrine was applicable at all here. Defendants claim that the evidence only shows that the boy stepped from his "place of safety" on the sidewalk or curb and into the roadway *after* he had left the truck driver's view as the truck proceeded past him; that until the boy entered the roadway he was not in a "position of danger" (*cf. Dalley* v. *Williams,* 73 Cal.App.2d 427, 435 [166 P.2d 595]), at which time he apparently ran into the rear side of the truck; and the truck driver therefore had no chance of avoiding the impact. It seems difficult to find a basis for application of the doctrine in view of the evidence presented and more particularly, in view of the account of the only eye-witness to the actual happening of the accident, the boy's sister. Her testimony indicated that as the boy walked toward the curb, he realized the danger of venturing into the roadway while trucks were passing and, in fact, told her to get back on the sidewalk as they waited. But assuming for the purpose of discussion that under any possible view of the evidence the last clear chance doctrine could be deemed applicable, the jury was instructed with respect to that doctrine and apparently did not find all the necessary conditions for its application to exist. Plaintiffs do not challenge the sufficiency of the evidence to sustain the adverse verdict, but they do contend that the court erred in its omission of their proposed modification of BAJI 205.

The instruction given by the court followed the exact language of BAJI 205. Plaintiffs proposed this BAJI instruction but had added to paragraph "Third" thereof the following clause, which is italicized: "Third: That the (truck driver) had actual knowledge of (the boy's) perilous situation, *or that (the driver) knew facts from which a reasonable*

*person would have believed that (the boy) was in peril."*
This italicized portion was not given. The BAJI instruction on last clear chance, in unmodified form, was analyzed recently in *Brandelius* v. *City & County of San Francisco, supra,* 47 Cal.2d 729. It was there held to be erroneous as it was found to be "misleading" and "confusing" in its amplification of the prescribed elements for application of the doctrine. Plaintiffs' proposed modification of the third paragraph of the BAJI instruction would obviously have increased the already existing confusion in the BAJI instruction. We therefore conclude that plaintiffs may not successfully complain of the failure of the trial court to include plaintiffs' proposed modification in the BAJI instruction, which instruction was given at plaintiffs' request.

■ Plaintiffs argue that the force of the stated last clear chance doctrine was nullified by the giving of the following instruction on continuing negligence. (BAJI 205-A, Third Paragraph): "The Doctrine of Last Clear Chance is invoked to defeat the defense of contributory negligence only in a case when, after plaintiff's negligence has put him into a position of danger, its work as an efficient agent of causation ceases, and it does not play a part in proximately causing the accident. When, on the other hand, a person's negligence not only places him in a position of danger, but thereafter it or its effect continues, and as a proximately causing factor, brings about, or helps to bring about, the accident, then the law of contributory negligence applies, and such person may not recover." Plaintiffs object to this instruction, claiming that it declares that if plaintiff continues to be negligent up to the moment of the impact, he cannot recover from the defendant who failed to exercise the last clear chance to avert the accident, even though plaintiff's negligence was not a proximate cause thereof. Such proposition, of course, is not the law (*Doran* v. *City & County of San Francisco,* 44 Cal.2d 477, 486-487 [283 P.2d 1]; *Sills* v. *Los Angeles Transit Lines,* 40 Cal.2d 630, 639 [255 P.2d 795]), and the instruction does not so state. The first sentence states in effect that the doctrine does not apply unless the plaintiff's negligence has become "remote in causation." (*Center* v. *Yellow Cab Co.,* 216 Cal. 205, 207-208 [13 P.2d 918].) The second sentence states that if the plaintiff's negligence or its effect continues so as to be a "proximate cause" of the accident, then such negligence will bar a recovery. (*Gillette* v. *City of San Francisco,* 58

Cal.App.2d 434, 440 [136 P.2d 611].) Thus, the instruction is in line with the authorities dealing with the last clear chance doctrine which have rationalized that doctrine, in its relation to the doctrine of contributory negligence, on the basis of proximate cause. (*Sparks* v. *Redinger,* 44 Cal.2d 121, 124-125 [279 P.2d 971]; *Girdner* v. *Union Oil Co., supra,* 216 Cal. 197, 203-204; see annos: 92 A.L.R. 47; 119 A.L.R. 1041; 171 A.L.R. 365.)

▮ However, while this instruction may be technically correct, it might be argued that it could be confusing to a lay jury were it not for other considerations. The instruction was immediately preceded by the general last clear chance instruction (BAJI 205), reciting the elements of the doctrine, including the circumstance of the negligent plaintiff totally unaware of his impending peril, and concluding with the statement that if *all* the prescribed "conditions [were] found" to exist "with respect to the accident in question," then the jury *"must find against the defense of contributory negligence . . .* because under such conditions the law holds the defendant liable for any injury suffered by [the] plaintiff and proximately resulting from the accident *despite the negligence of [the] plaintiff."* (Emphasis added.) With these instructions so submitting plaintiffs' right to recovery in terms of proximate cause, it seems reasonable to assume that the jury realized that in this as "in every case of negligent unawareness plaintiff's negligence continues to the very time of the injury, but if the elements of the last clear chance doctrine are present that rule nonetheless applies." (*Overacker* v. *Key System,* 99 Cal.App.2d 281, 284 [221 P.2d 754].) Accordingly, plaintiffs' objection to the instruction on continuing negligence may not prevail. (See *Clark* v. *Vieroth,* 141 Cal.App.2d 462, 465-466 [296 P.2d 823].)

▮ Before concluding this phase of the discussion we should state that it appears that any instruction such as BAJI 205-A, Third Paragraph, is technical in nature and is of little, if any, assistance to the average jury in applying the last clear chance doctrine. It would be more helpful, in our opinion, if the courts would frankly recognize that the last clear chance doctrine is in reality an exception to, or modification of, the ordinary rules making plaintiff's contributory negligence a bar to plaintiff's recovery. (See Prosser on Torts, second ed., 1955, p. 290.) In other words, when all the essential elements for the application of the last

clear chance are present, then the negligence of the defendant, who failed to exercise the last clear chance to avoid the accident, is deemed in law to be the sole proximate cause of the accident; and under these circumstances, the defendant may be held responsible to plaintiff for the resulting damage despite the contributory negligence of plaintiff. An instruction to that effect, coupled with proper instructions on the essential elements of the last clear chance doctrine, would give the jury a clearer understanding of the real issues for its determination and would avoid complicating the jury's deliberations by instructions which place upon the jurors the burden of rationalizing their findings and conclusions with the ordinary concepts of proximate cause.

Plaintiffs next contend that the jury was erroneously instructed that the truck driver was entitled to assume that the injured boy would obey the law without regard for his tender age. The challenged instruction reads as follows: "A person who, himself, is exercising ordinary care has a right to assume that others, too, will perform their duty under the law, and he has a further right to rely and act on that assumption. Thus it is not negligence for such a person to fail to anticipate an accident which can be occasioned only by a violation of law or duty by another. *However, an exception should be noted*: the rights just defined *do not exist when* it is reasonably apparent to one, or *in the exercise of ordinary care* would be *apparent to him*, that another is not going to perform his duty." (Emphasis added.) This instruction must be considered with the instructions, requested by plaintiffs, which preceded it: "Ordinarily it is necessary to exercise greater caution for the protection and safety of a young child than for an adult who possesses normal physical and mental faculties. *A person operating a motor vehicle must anticipate the ordinary behavior of children*. The fact that they usually cannot and do not exercise the same degree of prudence for their own safety as adults, that they often are thoughtless and impulsive, imposes a duty to exercise a proportional vigilance and caution on a person operating a motor vehicle, and from whose conduct injury to a child may result. (Emphasis added.)

"The presence of children is in itself a warning requiring exercise of care for their safety. The conduct of children is unpredictable and a person operating a motor vehicle should anticipate their thoughtlessness and impulsiveness. A greater degree of care is required of a driver of a vehicle

when he knows a small child is at play than in a case where a person of mature discretion is involved.''

Considering these last mentioned instructions together, it is clear that the jury was properly told that a child is only held to a standard of care in accordance with his age and the existing conditions (*Galbraith* v. *Thompson,* 108 Cal.App.2d 617, 621 [239 P.2d 468]), and that here the driver was only entitled to assume that the children would act as other children of like age would ordinarily act under similar circumstances. (*Hilyar* v. *Union Ice Co.,* 45 Cal.2d 30, 36-37 [286 P.2d 21].)

■ Plaintiffs next contend that the jury was instructed according to the rules required of an adult pedestrian. Such is not the case. At plaintiffs' request, the accepted instruction on the standard of care required of a minor was given (BAJI 147), the first sentence of which reads: ''A child is not held to the same standard of conduct as an adult and is only required to exercise that degree of care which ordinarily is exercised by children of like age, mental capacity and experience.'' Then followed the general instruction, of which plaintiffs complain, as to the duty owed by a pedestrian while crossing a street. (BAJI 201-C.) This latter instruction, given at defendants' request but with certain modifications in recognition of the minor plaintiff's status, reads: ''Before attempting to cross a street that is being used for the traffic of motor vehicles, it is a pedestrian's duty to make reasonable observations to learn the traffic conditions confronting him; to look to that vicinity from which, were a vehicle approaching, it would immediately endanger his passage; and to try to make a sensible decision whether it is reasonably safe to attempt the crossing. What observations he should make, and what he should do for his own safety, while crossing the street are matters which the law does not attempt to regulate in detail and for all occasions, except in this respect; it does place upon him the continuing duty to exercise ordinary care to avoid an accident, *the degree of ordinary care in the case of a minor is that ordinarily exercised by a child of like age, mental capacity and experience, under the same or similar circumstances.*'' (Emphasis added.) Thus it is clear that the instructions emphasized the determinative consideration to be not whether the minor plaintiff acted as an adult should, but whether he used the care ordinarily exercised by like children in similar circumstances. Accordingly, the matter of whether

or not the boy was chargeable with contributory negligence in the happening of the accident was a question of fact properly left to the jury. (*Raggio* v. *Mallory,* 10 Cal.2d 723, 727 [76 P.2d 660]; *Richardson* v. *Ribosso,* 120 Cal.App. 641, 643 [8 P.2d 226]; *De Nardi* v. *Palanca,* 120 Cal.App. 371, 376 [8 P.2d 220].)

 Nor is there merit to plaintiffs' further claim that the trial court erroneously instructed the jury that the minor plaintiff was *required* to yield the right of way to defendants' truck. The criticized instruction reads as follows: ''While as to a roadway locality such as that involved in this case, a pedestrian has a right to cross the road at any point, these factors of consideration enter into the question of what conduct is required of him in the exercise of ordinary care. First: If he crosses at a point other than within a marked crosswalk or within an unmarked crosswalk at an intersection, the law requires him to yield the right of way to all vehicles on the roadway so near as to constitute an immediate hazard. Second: The amount of caution required to constitute ordinary care increases as does the danger that a reasonably prudent person, in like position, would apprehend in the situation.

''This duty to yield the right of way is *not an absolute one,* and it is for you to determine from the facts, whether the minor plaintiff, Albert Garibaldi, exercised reasonable care under the circumstances, that is, the degree of care ordinarily exercised *by a child of like age, mental capacity and experience.*'' (Emphasis added.) This instruction supplied the precise language that was found wanting in the cases to which plaintiffs refer. (*Cole* v. *Ridings,* 95 Cal.App.2d 136, 141 [212 P.2d 597]; *Shipway* v. *Monise,* 59 Cal.App.2d 565, 571 [139 P.2d 60].) The second paragraph clearly and correctly informed the jury that the boy's duty to yield the right of way was not absolute, and that the basic test was whether he as a minor exercised reasonable care under all the existing circumstances. (See *Gavin* v. *Watt,* 144 Cal. App.2d 238, 242-243 [300 P.2d 842].)

 Plaintiffs next contend that the trial court erred in instructing the jury, at defendants' request, that ''Evidence of the oral admission of a party, other than his own testimony in this trial ought to be viewed by you with caution.'' Plaintiffs claim that it was not proper to give this instruction because the truck driver at the trial admitted having made certain prior statements which were inconsistent with

the account of the accident as given at the trial. These admissions then became a part of the driver's own testimony and so did not come within the "viewing with caution" rule. But in addition to these admissions, there were other prior statements of the driver in evidence which at the trial he did not admit having made, and which warranted the giving of this cautionary instruction. (See *Crawford* v. *Alioto,* 105 Cal.App.2d 45, 50-51 [233 P.2d 148]; *Freeman* v. *Nickerson,* 77 Cal.App.2d 40, 62 [174 P.2d 688].)

■ Plaintiffs finally object to the trial court's refusal to give their requested instruction on the existence of a prima facie speed limit of 25 miles per hour in effect at the time and place of the accident. It will be recalled that the accident happened in 1952 and prior to the 1953 amendment of section 511 of the Vehicle Code. They claim that Sunol Street was in a residence district (Veh. Code, § 90), where the prima facie speed limit was 25 miles per hour. (*Ibid,* § 511, subd. (b) (1).) Assuming that the accident happened in an area which might have qualified as a residence district, if properly signposted, the requested instruction was not proper unless there was evidence to show that speed limit signs were then in place at the entrance to the alleged residential district or to a contiguous residential district. (*Daniels* v. *City & County of San Francisco, supra,* 40 Cal.2d 614, 624; *Guerra* v. *Brooks,* 38 Cal.2d 16, 19-20 [236 P.2d 807]; *Reynolds* v. *Filomeo,* 38 Cal.2d 5, 11-13 [236 P.2d 801].) There was no evidence of such signposting other than the mention of a single sign at some indefinite location. Such vague and indefinite evidence was insufficient. Furthermore, the fastest that any witness stated that the truck was traveling at any time was about 30 miles per hour. The jury was fully and correctly instructed on the basic speed law (Veh. Code, § 510), and after an examination of the record, it reasonably appears that the jury found that the speed of the truck was not a vital factor in the happening of the accident.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., and McComb, J., concurred.

CARTER, J.—I dissent.

The majority opinion holds that various instructions given to the jury were not prejudicially erroneous. I cannot agree.

The same instruction on last clear chance that was given in

*Brandelius* v. *City & County of San Francisco,* 47 Cal.2d 729 [306 P.2d 432], was given in this case at plaintiff's request but an addition thereto* was stricken by the court. The majority opinion now says as it did in the Brandelius case that the instruction without the addition was incorrect and confusing; that therefore plaintiff cannot complain of it because it was given at his request and the addition thereto (not given) would have added to the confusion. I reiterate the comments in my dissent in the Brandelius case (47 Cal.2d 746) to the effect that the instruction without the addition was not erroneous nor confusing; that the addition was proper and should have been given. Even if the unmodified instruction was confusing the addition should have been given. It in effect told the jury that it could find actual knowledge by defendant of the boy's perilous position if a reasonable person would have believed he was in a perilous position, that is, if the facts would justify an inference that defendant knew of the boy's perilous position despite his protests to the contrary. In *Selinsky* v. *Olsen,* 38 Cal.2d 102, 105 [237 P.2d 645], this court pointed out that even though the defendant says he did not have such knowledge the facts may reasonably show that he did. We there stated: ''The second factor is lacking, urges defendant, because there is no showing that defendant was aware of plaintiff's perilous position or knew he could not escape therefrom. That depends upon the view one takes of the evidence. It is true that *defendant testified that he did not see plaintiff's car* until he was directly behind it, when plaintiff drove his car into the line of traffic in front of him, and that plaintiff's car was in motion at the time of the impact. Other evidence shows, however, that defendant was looking straight ahead as he approached plaintiff's car and his view was unobstructed. It may be inferred therefrom that he saw plaintiff's motionless car extending into the line of traffic. . . . Under the evidence most favorable to plaintiff, defendant could have seen plaintiff's car standing in the road ahead of him for a minute before the impact and thus could, by the exercise of ordinary care, have avoided the accident.'' (Emphasis added.) Plaintiff was entitled to have the jury advised on this issue especially in this case where, as in the Selinsky case, defendant said he

---

*The addition was: ''That the (truck driver) had actual knowledge of (the boy's) perilous situation, *or that (the driver) knew facts from which a reasonable person would have believed that (the boy) was in peril.*''

was watching the boy and his view was unobstructed. In *Peterson* v. *Burkhalter*, 38 Cal.2d 107, 111 [237 P.2d 977], we said: "Also relied upon for reversal of the judgment is the testimony of Burkhalter that when he first saw Peterson he was not aware of a possible collision. *But the application of the doctrine of last clear chance is not dependent upon an admission by the defendant that he expected that there might be a collision.* As stated in *Cady* v. *Sanford,* 57 Cal.App. 218, 226 [207 P. 45], *'It was not necessary that appellant should actually know that an accident was inevitable if he failed to exercise care. It is enough if the circumstances of which he had knowledge were such as to convey to the mind of a reasonably prudent man a question as to whether respondent would be able to escape a collision.'*

"Burkhalter compares his situation to that of the defendant in *Johnson* v. *Southwestern Engineering Co.*, 41 Cal.App.2d 623 [107 P.2d 417]. There the rule of last clear chance was held to be inapplicable because of a lack of evidence showing knowledge by the defendant of the plaintiff's danger. Johnson had fallen asleep while driving his automobile, and there was no evidence that the driver of the other car was aware of this fact. For that reason, it was held, the defendant did not know that Johnson was in a position of danger, and did not have the last clear chance to avoid the collision.

"Burkhalter knew that Peterson was oblivious to the impending collision, and he excuses his failure to do anything to avert the accident upon the ground that he had no reason to expect continuing negligence on the part of Peterson. However, there is ample evidence from which the jury could determine that a reasonably prudent man, knowing the facts of which Burkhalter was aware, should have foreseen that Peterson might not turn or stop his motor scooter. Under such circumstances, it was negligent for Burkhalter to proceed toward the intersection acting upon a contrary assumption." (Emphasis added.) Similarly, in the instant case, defendant could be said to have known of the presence of a very young child on the curb especially in view of the rule that: "A greater degree of care is required of a driver towards children than towards adults. The care required is greater still when the driver knows that small children are at play in the immediate vicinity. This is so because their conduct is unpredictable. The driver must anticipate their thoughtlessness and impulsiveness. Their very presence is a warning requiring the exercise of care. While a driver in

approaching a child upon a street or highway is not bound to guard against every possible contingency, yet where he sees a child in a place of danger, or might reasonably apprehend that if approached without warning the child would through fright or bewilderment place itself in danger, it is his duty to keep his car under such control as is reasonably necessary to avoid a collision. If he has knowledge of the presence of children in the immediate vicinity, he may be charged with negligence in injuring one of them, even though he did not see the injured child, particularly where the injury occurs near the child's home or a school. A fortiori, the driver may be held responsible where he sees the child approaching the path of his vehicle.

''The driver may be liable under the doctrine of last clear chance for an injury to a child, even under the assumption that the child's conduct amounted to contributory negligence, where he sees the child in the path of his vehicle in danger of being run over and realizes that the child is unaware of the approach of the vehicle.'' (7 Cal.Jur.2d, Automobiles, § 271; see also 30 A.L.R.2d 5.) In *Scandalis* v. *Jenny,* 132 Cal.App. 307, 310 [22 P.2d 545], it was held that defendant was negligent as a matter of law where a child ran into the side of his car, and on the issue of contributory negligence the court said: ''The next question is, was the plaintiff guilty of contributory negligence? To this question there can be but one answer, and that is in the negative. Even if it were negligence for a child of three years of age to stand in or near the center of a city street and look down, apparently unaware of the approach of an automobile, we are unable to see that such negligence contributed proximately to the injury that came to him by reason of the negligence of the defendant in the manner hereinbefore stated. By the exercise of ordinary care defendant should have seen and realized that plaintiff was unaware of the approach of the automobile, and his failure so to do placed upon him the whole blame for the accident.'' In *Hilyar* v. *Union Ice Co.,* 45 Cal.2d 30, 36 [286 P.2d 21], quoting from *Conroy* v. *Perez,* 64 Cal.App.2d 217, 224 [148 P.2d 680] : '' 'The presence of children is in itself a warning requiring the exercise of care for their safety. . . . Moreover, if the evidence shows that a driver has knowledge of the presence of children he may be held to have been responsible although it appears that he did not see the injured child in time to prevent the injury. . . .' . . . In *Freeland* v. *Jewel Tea Co.,* 118 Cal.App.2d 764, 769 [258 P.2d 1032], it

was held that it is ordinarily necessary to exercise greater care for the protection and safety of young children than for adult persons possessing normal and mature faculties (*Conroy* v. *Perez, supra,* 64 Cal.App.2d 217, 224); that their conduct is unpredictable and one operating a motor vehicle *should anticipate their thoughtlessness and impulsiveness* (*Shannon* v. *Central-Gaither U. Sch. Dist., supra,* 133 Cal. App. 124 [23 P.2d 769]). It was also held that the presence of children is in itself a warning requiring the exercise of care for their safety." (Emphasis added.)

Hence in the instant case defendant was bound to anticipate unpredictable action by the child who was playing along the curb. Knowing the child was there, and the likelihood of his going into the street, defendant had the duty to take precautions, but he took none. The added portion of the instruction requested by plaintiff should therefore have been given because it took into consideration the factors involved in a child's presence on the street and what defendant was required to anticipate in regard thereto.

The next instruction given is also clearly erroneous.* Contrary to the statement in the majority opinion, this instruction advised the jury that the last clear chance doctrine was not applicable if plaintiff's negligence continued up to the time of the impact. So interpreted it is conceded to be wrong; indeed the majority opinion says such instruction should not be given. The instruction states that the doctrine may apply "only" when plaintiff's negligence has ceased; and where plaintiff's negligence *"continues"* up to the time of the accident, he *cannot* recover because of his contributory negligence. The majority seeks to escape this interpretation on the assumption that the continuance of plaintiff's negligence is said to cease if it is no longer the proximate cause of the accident. The proximate cause feature would only confuse the jury because, as pointed out in the majority opinion, it is fictional reasoning to say that the last clear chance is based on the theory that where applicable, the plaintiff's negligence has

---

*"The Doctrine of Last Clear Chance is invoked to defeat the defense of contributory negligence only in a case when, after plaintiff's negligence has put him into a position of danger, its work as an efficient agent of causation ceases, and it does not play a part in proximately causing the accident. When, on the other hand, a person's negligence not only places him in a position of danger, but thereafter it or its effect continues, and as a proximately causing factor, brings about, or helps to bring about, the accident, then the law of contributory negligence applies, and such person may not recover."

ceased to be the proximate cause of the accident. Here the jury was told that if plaintiff's negligence ceased before the impact the doctrine applied as it was not then the proximate cause of the accident. No one should expect the jury to follow such intricate and finespun reasoning. To the jury the plaintiff is still negligent, he continues to be so and the jury would naturally so assume; his negligence would still be a cause of the accident to them even though the defendant could have avoided it by the exercise of ordinary care. But they are told that they may not mitigate such an anomalous situation by the application of the last clear chance doctrine. This is especially true in this case where we have a child involved and consideration must be given to defendant's duty in respect to a child on the curb in close proximity to his moving truck. The jury would normally assume that the child's actions would be negligent if he were an adult and his negligence continued up to the time of the accident and were one of the causes of the accident. Moreover, the instruction defining proximate cause informed the jury that a cause which produces injury, is proximate.* The jury was further instructed that ". . . if you further find that the negligence of both proximately caused the accident, then if you so find, your verdict must be for the defendants." It is reasonable to suppose that the jury would conclude that conduct of the child helped produce the injury—was a proximate cause and the jury would not therefore apply the last clear chance doctrine under the instruction now discussed.

Likewise the instruction told the jury that defendant had a right to assume that the child would perform his duty and obey the law, and hence, if he did not anticipate such conduct by the child, there was no negligence. It is true, as stated by the majority, that thereafter the jury was instructed as to what conduct to expect from a child, but that instruction did not cure the one plaintiff attacks. The instructions are conflicting, as the jury was told in one breath that defendant need not anticipate that a child might act as an adult—reasonably and according to law—and in the next, that a child's actions are not measured the same way

---

*"The proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred. It is the efficient cause, the one that necessarily sets in operation the factors that accomplish the injury. It may operate directly or through intermediate agencies or through conditions created by such agencies."

as an adult's. In the instructions with reference to the conduct of children the jury was not informed that defendant should "anticipate" unpredictable action by a child. The jury would be confused because, it would not know whether to apply the adult standard or child standard in evaluating defendant's conduct, and this was the very essence of plaintiff's case, that is, whether knowing that the child was playing at the curb, defendant took proper precautions, or could proceed with the assumption that the child would not run out into the street.

The error in the instruction now discussed was further emphasized by the giving of instructions on the duty of a pedestrian in crossing a street phrased in the terms of an adult pedestrian—that he must yield the right of way when not crossing in a crosswalk. This is also in conflict with the duty imposed upon the defendant to anticipate the conduct of a small child, and, in effect, negatives it.

Considering all of the foregoing instructions, it is evident that the jury was placed in a position where it could not apply the appropriate duty of defendant toward a child playing near the curb of a street nor measure the child's duty under the circumstances. The instructions were irreconcilable. Defendant, knowing of the child's presence, playing near the street, oblivious to defendant's truck, also knew, or was bound to know, that the child was likely to enter the street, yet he did nothing to cope with such a contingency. He did not slow down his truck, come to a stop or sound his horn. Under these circumstances, the jury could have found, if properly instructed, that he had a last clear chance to avoid the accident but failed to avail himself of it.

The last clear chance doctrine like res ipsa loquitur was evolved by great liberal minded judges to ameliorate the rigor of the common law in its application to the law of negligence. (See, excellent article by Myron L. Garon, member of the Los Angeles Bar, entitled "*Recent Developments in California's Last Clear Chance Doctrine,*" 40 Cal.L.Rev. 404.) It is my view that these doctrines should be applied liberally to the end that relief may be granted to those who suffer injuries as the result of the negligent conduct of others. The application of these doctrines has been greatly restricted by recent decisions of this court which indicate a marked conservative trend. (*Rodabaugh* v. *Tekus,* 39 Cal.2d 290 [246 P.2d 663]; *Doran* v. *City & County of San Francisco,* 44 Cal.2d 477 [283 P.2d 1]; *Brandelius* v. *City & County of*

*S. F.,* 47 Cal.2d 729 [306 P.2d 432]; *Leonard* v. *Watsonville Community Hospital,* 47 Cal.2d 509 [305 P.2d 36]; *Danner* v. *Atkins,* 47 Cal.2d 327 [303 P.2d 724]; *Barrera* v. *De La Torre, ante,* p. 166 [308 P.2d 724], filed March 22, 1957.) Whether this conservative trend is in accord with public interest may be open to serious question. In my opinion it is more in keeping with the public interest that these doctrines be liberally applied by our courts.

I would therefore reverse the judgment.