SHEPARD, J.
 

 This is an action for money damages for personal injury. Defendants had judgment in the trial court, and plaintiffs appeal. Plaintiffs also purport to appeal from the order denying their motion for a new trial. Since the order denying the motion for new trial is not appealable the attempted appeal therefrom must be and is dismissed. (See Code Civ. Proc., § 963.)
 

 The only contention presented to this court by appellants is that the evidence is insufficient to support the verdict and judgment.
 

 “ When there is substantial evidence or any inference to be drawn from the evidence to support the findings of the trial court, an appellate court will not make determinations of factual issues contrary to those made by the trier of fact. ’ ’
 
 (Smith
 
 v.
 
 Bull,
 
 50 Cal.2d 294, 306 [11] [325 P.2d 463].)
 

 “The rule as to our province is: ‘In reviewing the evidence ... all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. It is an elementary . . . principle of law, that when a verdict is attacked as being unsupported, the power of .the appellate court begins and ends with a determination as to whether there is any
 
 substantial
 
 evidence, contradicted or uncontradieted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial- court. ’ ’ ’
 
 (Estate of Bristol,
 
 23 Cal.2d 221, 223 [2] [143 P.2d 689].)
 

 With these oft repeated rules in mind the record before us shows the facts in this case to be that plaintiff Sherman Harris is the manager of a restaurant known as Laurye’s Steak Ranch, which is located on the south side of Highway 101, one mile west of Cathedral City, in Riverside County. Plaintiff Charles Paul Harris is the son of plaintiff Sherman Harris and his wife Arlene Harris, and at the time of the accident herein complained of was about 18 months old. The restaurant has a general parking area with marked-off spaces for customer and employee parking. Black-top pavement was installed in this parking area and on the west side
 
 *135
 
 of the restaurant about six months prior to the accident. There is a service entrance for tradesmen to take in their goods on the west side of the restaurant. The restaurant was built in 1948 and during the whole of the 10 years of its existence the service entrance has been in the same position. Plaintiffs’ family lives in an apartment the nearest wall of which is about 50 feet west of the service entrance to the restaurant. The area between the buildings and also to the north of the apartment, as is above referred to, was black-top pavement. The distance between the buildings was not entirely open as an oleander hedge was growing near the west wall of the restaurant. The yard adjacent to the south side of the apartment was surrounded by a hedge but was unfenced. On the blacktop near the front of the service entrance was a “No Parking” sign painted on the pavement. The defendant Kelly had been delivering ice through this service entrance and parking near the sign three or four times a week for about two years. Neither Harris nor anyone else had ever told him not to park in that spot. Nor had Harris or anyone else voiced the slightest objection to his parking there.
 

 Shortly before noon on March 21, 1956, Kelly parked in front of the service entrance to make an ice delivery to the restaurant. The front of his delivery vehicle while so parked was four or five feet north of the end of the oleander hedge. He saw no children nor even adults in the area of the outside of the buildings. He knew the Harrises lived in the apartment and on some occasions had seen the Harris children. There is no evidence that he had seen them playing around or near the service entrance nor is there any evidence that they did, in fact, commonly play there. Kelly went to the back of the truck, secured the ice, delivered it to the restaurant kitchen, in five or ten minutes returned to the truck from the kitchen, went to the back of the truck along the left side of the truck, closed the tail-gate, returned, saw no children or anyone else in the vicinity but did not examine the right side nor underneath the truck. He then looked in the rear view mirror, started backing and the left front wheel ran over plaintiff’s child with resultant very serious injuries.
 

 The “No Parking” sign was a private sign on private property. Prom the evidence before it the jury could reasonably have believed that Harris intended it merely to preserve the location against customer parking so that delivery vehicles would have a convenient space from which to discharge their goods.
 

 
 *136
 
 It is true that the driver of a vehicle who knows or has reasonable cause to believe that children are in the immediate neighborhood of his vehicle must exercise greater care for their safety than is customary when only adults are near.
 
 (Freeland
 
 v.
 
 Jewel Tea Co.,
 
 118 Cal.App.2d 764, 769 [6] [258 P.2d 1032];
 
 Geren
 
 v.
 
 Lowthian,
 
 152 Cal.App.2d 230, 233 [1-3] [313 P.2d 12].) However, in the case at bar the evidence was amply sufficient for the jury to have believed that Kelly did not know of and did not have any reasonable cause to believe that a child or children were anywhere in the immediate neighborhood of his truck. The standard of care to be applied by the jury is necessarily consonant with the facts believed by them to be true. “Ordinarily the question of whether a driver should be alerted to the necessity of looking for the presence of children is one of fact for the jury to solve, as is also the question of whether that duty, once it arises, has been properly performed.”
 
 (Kading
 
 v.
 
 Willis,
 
 135 Cal.App.2d 82, 88 [6] [286 P.2d 861].)
 

 The judgment is affirmed. The attempted appeal from the order denying a motion for a new trial is dismissed.
 

 Griffin, P. J., and Mussell, J., concurred.