[Civ. No. 9. Fifth Dist. Mar. 5, 1962.]

JACKIE ABNEY, a Minor, etc., et al., Plaintiffs and Appellants, v. LEIGHTON PAUL COALWELL et al., Defendants and Respondents.

Dorsey, Bultman & Bianchi and Henry E. Bianchi for Plaintiffs and Appellants.

Bradley, Wagy, Bunker & Hislop and Jack W. Bradley for Defendants and Respondents.

CONLEY, P. J.—Jackie Abney, a minor, sued the defendants, Leighton Paul Coalwell and his wife, for injuries received when he was struck by an automobile at the intersection of 6th and San Emidio Streets in the City of Taft on July 2, 1957. The father of the infant, James Abney, joined with him as a plaintiff to seek recovery of his hospital and medical expenses; James Abney, having died, the mother of the child, Euna E. Abney, was substituted as a party. The jury brought in a verdict in favor of the defendants; and the trial court having denied a motion for a new trial, the cause was appealed to this court. The plaintiffs have also purported to appeal from the order denying the motion for a new trial, but this ruling is not itself subject to appeal. (*Rodriguez* v. *Barnett*, 52 Cal.2d 154, 156 [338 P.2d 907].)

Appellants raise three principal points, arguing: first, that the evidence does not justify the verdict; secondly, that the court committed error by refusing certain offered instructions requested by the plaintiffs; and thirdly, that defendants' counsel was guilty of prejudicial misconduct by arguing that the act of the child in running into the street was the cause of the accident.

The facts of the case may be briefly summarized as follows: Leighton Paul Coalwell was operating a Chevrolet automobile in a southerly direction on 6th Street, an arterial highway, in the City of Taft prior to and at its intersection with San Emidio Street. At the time of the accident it was dusk; sunset occurred at 8:16 p. m. Pacific daylight-saving time; the police department received a call reporting the accident at 8:43 p. m., which was not quite 30 minutes after sunset. The weather, generally, was clear, but it was "dusky-dark" outside.

The minor plaintiff was 3 years old at the time of the accident. He had been playing ball with a group of children in the block west of the intersection. The ball that was being tossed about was thrown over the head of one of the children, and the little boy started out after it, running as fast as he could. There is a divergence of the testimony with respect to the course he took to the point where he collided with the automobile; some evidence indicates that he ran on the sidewalk until he got to the corner and that he then cut across it, not in the pedestrian lane, but in the central part of the intersection until he was struck; there is other testimony that he ran on the side street about 10 feet from and parallel to the southerly curb to the point of the collision.

 The Coalwell car was traveling between 15 and 20 miles per hour; as a matter of fact, it was going slower than the average flow of traffic. The headlights of the car were lighted. The little boy was so short that his head was below the headlights of the car.

Mr. Coalwell did not see the plaintiff before the impact. Other witnesses sitting or standing near the point of collision did see the youngster running toward the place where he was struck; these persons included his small sister and people who were at the southwesterly corner of the intersection. The defendant stopped his car within 15 feet of the point of impact, which was less than one car length. The child was lying 9 feet 6 inches north of the south crosswalk and 2 feet west of the center line of 6th Street.

There is no question but that the little boy was badly hurt. He was not guilty of contributory negligence because of his extreme youth; the court so instructed the jury. The court, however, told the jury that the father of the child could be found guilty of contributory negligence with respect to his own claim for restitution of medical and hospital expenses if the evidence justified it. The verdict in favor of the defendants as to all issues conclusively shows that the jury believed that there was no negligence on the part of the defendant driver. We, therefore, have only one basic question in the case to consider on this appeal from the evidentiary standpoint, namely, was there substantial evidence to justify the finding of the jury that no blame attached to Mr. Coalwell?

 It is argued, in effect, by appellants that inasmuch as the little boy was incapable of contributory negligence under the law, it must necessarily follow that Mr. Coalwell was negligent. This is obviously an erroneous premise. For accidents happen every day without anyone's being legally liable for the result. In an action of this kind the court and jury inquire not only as to what did happen but as to who, if anyone, was to blame. There may be serious injuries without liability. And that is exactly what the jury found and exactly what the trial court approved in ruling on the motion for a new trial.

 Upon what factual basis do the appellants claim that the evidence is insufficient to support the verdict? The defendant was driving a new car, in good condition, the brakes being excellent; he was not traveling at an improper rate of speed, but was going only between 15 and 20 miles per hour,

somewhat slower even than other traffic on the street. He did not see the child before the accident; but it does not follow under the evidence as presented that this was negligence. The little boy ran suddenly and without warning into the pathway of the automobile. The headlights were lighted, even though technically they did not have to be at that particular moment during the half-hour after sunset. The appellants argue, because certain other witnesses stated they could see the child run into the street, that it was incumbent upon the jury to find that the respondent should likewise have seen him. But this is a *non sequitur*. The appellants' witnesses Frank Montoya, George Long and Alva Long and the sister of the minor plaintiff observed the small boy before the accident; their position in relation to the child was different from that of the respondent. ■ Simply because some people under one set of circumstances are able to observe something does not require a finder of fact to hold that other persons in different circumstances are negligent if they do not observe the same thing. ■ Taking all of the evidence into consideration and, in line with our duty as an appellate court, assuming that to be true which favors the respondent, it seems clear that the jury had ample grounds upon which to find that the defendant was not guilty of negligence.

■ Based on timely and pointed requests, a litigant in a civil case is entitled to instructions that are full and fair, complete and comprehensible; if this standard is observed by the trial court, it is not reversible error for a judge to fail to adopt a specific wording or a frozen formula in his charge. Neither plaintiff nor defendant has a vested interest in BAJI or CALJIC.

What did the trial court do in the matter of instructing the jury with respect to the basic question of negligence? Turning to the record in the case, we must conclude that the instructions actually given were ample, fair and correct. The definitions of negligence given by the court to the jury were concise, sound and easily understood. The court further instructed them: "The amount of caution required of a person in the exercise of ordinary care depends upon the danager [*sic*] which is apparent to him or should be apparent to a reasonably prudent person in the particular situation and circumstances involved."

The trial judge then warned the jurors that the standard that is set up by the law is not what an extraordinarily

cautious individual or an exceptionally skillful one would do, but how a person of reasonable and ordinary prudence would act. The court continued:

"One test that is helpful in determining whether or not a person was negligent is to ask and answer whether or not, if a person of ordinary prudence had been in the same situation and possessed of the same knowledge, he would have foreseen or anticipated that someone might have been injured by or as a result of his action or inaction. If such a result from certain conduct would be foreseeable by a person of ordinary prudence with like knowledge and in like situation, and if the conduct reasonably could be avoided, then not to avoid it would be negligence."

Contributory negligence was defined, and the jury was told that a child of the age of the plaintiff minor, Jackie Abney, is incapable of contributory negligence. Their field of inquiry as to contributory negligence was definitely limited to the acts or omissions of the parent with respect to the separate claim made by him for hospital and medical expenses.

The court then went on to define proximate cause in apt and understandable language and rounded out a proper charge by concise and complete instructions relative to witnesses and damages.

Some courts have a tendency to overinstruct juries and to stress refinements and special applications of the basic rules which are comprehensible to legal philosophers but are largely meaningless to the average juror. Trial courts should and do have a reasonable degree of discretion in refusing to repeat all the possible permutations and combinations of legal principles in their instructions.

The instructions which were proposed by appellants and refused by the court will be commented upon, each in turn. However, as a general characterization, respondents correctly point out that many of them were given in their proposed form or in a closely similar form in other cases and that it has been held as to most of them that their employment did not constitute error; of course, this is not equivalent to saying that a failure to give any of these specific instructions constitutes reversible error in this case. All of them are subject to criticism as to form or as to their repetitious character.

The first of these proposed instructions is as follows: "It is the duty of the driver of a motor vehicle, using a public highway, to be vigilant at all times and to keep the vehicle under such control that, to avoid a collision, he can stop as

quickly as might be required of him by eventualities that would be anticipated by an ordinarily prudent driver in like position.''

This is BAJI No. 201F. While the instruction has been approved in other cases (*Reich* v. *Long*, 97 Cal.App.2d 657, 660 [218 P.2d 589]; *Koon* v. *Sher*, 98 Cal.App.2d 530, 534, 535 [220 P.2d 784]; *Reed* v. *Stroh*, 54 Cal.App.2d 183, 189 [128 P.2d 829]), it has also been criticized (*Dayton* v. *Landon*, 192 Cal.App.2d 739 [13 Cal.Rptr. 703]; 2 BAJI, 1962 Pocket Parts, p. 15), and it obviously would be improved if the real duty of the driver of a vehicle to exercise ordinary care were explicitly stated. The requirement, ''. . . to be vigilant at all times and to keep the vehicle under such control that, to avoid a collision, he can stop as quickly as might be required of him by eventualities that would be anticipated by an ordinarily prudent driver in like position,'' is somewhat ambiguous and carries an overtone of absolute, rather than relative, duty.

The next refused instruction is: ''A driver cannot presume that the way is clear as long as he is on the right side of the road and going at a lawful speed, but he must anticipate the presence of persons at any point in the street, especially at intersections, and keep a proper lookout and his car under control to avoid hitting them. The fact that he did not know anyone was on the roadway is no excuse.''

Again, the yardstick of ordinary care is not explicitly referred to, and the instruction is ambiguous as to the limits of the duty of a driver to keep ''. . . his car under control to avoid hitting them.'' This seems to impose an insurer's liability rather than one measured solely by the duty of ordinary care. Furthermore, the last sentence in the instruction as applied to the instant case is misleading; if, although exercising ordinary care, the defendant did not know that the minor plaintiff was on the roadway, it would have constituted a complete excuse.

Next, the appellants charge that the court committed reversible error in failing to give the following proposed instruction: ''The driver of a motor vehicle is in charge of a dangerous instrumentality capable of inflicting serious and often fatal injuries, and for that reason, he is charged with a higher degree or greater amount of care than a pedestrian.''

The appellants allege that this is ''. . . in substantially the same language as BAJI No. 201E,'' but this statement is inaccurate. The proposed instruction is patently unsound in

that it says that the driver ". . . is charged with a higher degree . . . of care than a pedestrian." Although the driver of an automobile may owe a greater quantum of care, he owes the same degree of care as a pedestrian, namely, ordinary care.

The appellants also complain that the following instructions based on the "looking and not seeing" theory should have been given: "General human experience justifies the inference that when one looks in the direction of an object clearly visible, he sees it, and that when he listens, he hears that which is clearly audible. When there is evidence to the effect that one did look, but did not see that which was in plain sight, or that he listened, but did not hear that which he could have heard in the exercise of ordinary care, it follows that either some part of such evidence is untrue or the person was negligently inattentive."

This instruction has been adversely criticized, and it has been held from time to time that a failure to give it was not error. (See *Schwenger* v. *Gaither*, 87 Cal.App.2d 913, 914 [198 P.2d 108]; *Rickey* v. *Kardassakis*, 110 Cal.App.2d 291, 295 [242 P.2d 384]; *Callahan* v. *Theodore*, 145 Cal.App.2d 336, 339 [302 P.2d 333]; *Laursen* v. *Tidewater Assoc. Oil Co.*, 123 Cal.App.2d 813, 818 [268 P.2d 104].)

In the circumstances of the instant trial the giving of this proposed instruction would have been unfair to defendants. It incorporates a strong suggestion of belief that whatever is involved in the particular case as an object of vision is clearly visible. This, of course, was the chief factual question to be determined by the jury. The defendants contended that the little boy, running as he did suddenly into the path of the automobile in the dusk and being so short that he did not come up to a level with the lights of the car, was not "clearly visible." For the court to have given this instruction in this case would have been prejudicially erroneous.

 The next instruction on this subject: "It is the duty of a driver where his view is unobstructed to see persons on the road in front of him and he must keep a proper look out for them and keep his car under such control as will enable him to avoid hitting them," is in effect a charge that a defendant driver owes an absolute duty, not only to see someone on the road, but to avoid hitting him. The instruction was properly refused.

The following special instruction was also refused: "A

motorist must watch out for pedestrians particularly at places where conditions are such that there are special reasons for anticipating the presence of pedestrians.''

The correct form of this instruction should have been that a motorist should use ordinary care to watch out for pedestrians at all times.

The appellants further point out that in instructing the jury with respect to the possible contributory negligence of the parent, the court went into detail and argue that there was not an equal balance of similarly detailed instructions with respect to the duty of the driver. We find no merit in this assignment of error.

Lastly, appellants contend that the respondents committed error when their counsel argued to the jury that the cause of the accident was the fact that the child unexpectedly ran into the street. There was no objection to this statement in the court below, and ordinarily no complaint can be made on appeal with respect to alleged prejudicial misconduct of opposing counsel in the absence of some proper registration of a complaint in the lower court. (*Schultz* v. *Sussman,* 7 Cal.App.2d 100, 103 [45 P.2d 409].) Appellants' attorneys say that they did not object because the trial judge had told counsel in chambers that such an argument would be permitted. But this did not excuse their failure to make an objection in open court if they desired to avail themselves of the point on appeal. In any event, the argument was not improper. As already observed, there may be injuries for which there is no liability, and the sudden dash of the child into the street was arguably at least, the cause of the accident, even though there was no negligence on the part of either plaintiffs or defendants.

The purported appeal from the order denying the motion for a new trial is dismissed, and the judgment is affirmed.

Brown, J., and Stone, J., concurred.