[Civ. No. 389.   Fifth Dist.   Apr. 26, 1965.]

CORDELIA WALKER, a Minor, etc., Plaintiff and Respondent, v. FRESNO DISTRIBUTING COMPANY, Defendant and Appellant.

Chinello, Chinello & Maddy and John D. Chinello for Defendant and Appellant.

Peckinpah, Fryer & Karr and Richard W. Nichols for Plaintiff and Respondent.

CONLEY, P. J.—A heavy gate, weighing approximately 400 pounds, in a chain-link fence on the premises of the defendant, Fresno Distributing Co., fell upon the minor plaintiff, Cordelia Walker, aged upwards of three years, on July 28, 1960. The owner and the Hurricane Fence Company, which installed the gate several months before, were both sued. The jury returned a unanimous verdict in favor of the plain-

tiff against the Fresno Distributing Co. and also in favor of the fence company. The motion for a new trial of the responsible defendant was denied, and it asks on this appeal that the judgment of $5,221.15 be reversed on the following grounds:

1) That the judgment is not supported by substantial evidence, and

2) That the jury was misdirected on three subjects:

a) The attractive nuisance doctrine,

b) The res ipsa loquitur doctrine, and

c) Proximate cause.

The premises of Fresno Distributing Co. are located in the City of Fresno facing on two streets, Van Ness Avenue and San Benito Street. A chain-link fence surrounding the premises was installed by the Hurricane Fence Company; it had two gates in it; the one here in question faced on San Benito Street near the home of the plaintiff and in the vicinity of the Emerson School which the plaintiff was too young to attend, but where there were young pupils who frequently were present in the area in question. The gate was 6 feet high and 16 feet long; it moved on wheels on a track and had stoppers and keepers as standard equipment; the stoppers prevented it from rolling off the track; the keepers were attached to the frame of the gate and helped to keep the wheels on the track. In its normal condition the gate could not be removed from the track unless great force was exerted to effect that end. Many trucks entered the yard of the Fresno Distributing Co. where it conducted its business of wholesaling and storing plumbing and electrical supplies; on more than one occasion such trucks had run into the gate and damaged it or its supporting posts. There was evidence indicating that shortly before the casualty in question the owner of the Fresno Distributing Co. had called the Hurricane Fence Company and requested that it come to repair the structure; after the installation of the gate in January 1960, these people had at least once before called at the premises to straighten the fence and gate where it evidently had been struck by a heavy truck. The evidence is positive that when the gate was in proper condition, the weight of a little girl clinging to it could not possibly cause it to fall upon her.

Robert Candoian, the warehouseman on the premises at the time of the accident and a witness for the Fresno Distributing Co., stated that he had opened the gate for business on the morning of July 28, 1960; while he said that it was then in

good condition, such evidence is not necessarily binding on plaintiff and constitutes a conflict with other evidence in the case; Mr. Candoian had often seen children playing on and about the gate and he had notified Mr. Cloud, owner of the premises, of this fact. He had, at every opportunity, told children to get away from the gate. On this day, he happened to look toward the structure at the moment of the accident and then saw that Cordelia was clinging to it and that in a partly-shut situation it was moving on its track. He saw it topple over upon the little girl and knew that she was hurt. She was taken to the hospital with a broken leg and with numerous bruises and abrasions.

The appellant seems to believe that the attractive nuisance doctrine does not apply. But in 35 California Jurisprudence, Second Edition, Negligence, section 154, pages 671-673, it is said: ''The courts of this state have adopted the so-called attractive nuisance doctrine, or rule of the turn-table cases. Under this doctrine, the possessor of immovable premises is generally under a duty not to leave thereon, unguarded and exposed to the observation of children, dangerous and attractive contrivances that children would naturally be tempted to go about or upon, and against the danger of which action their immature judgment gives them no warning or defense. He is liable for injury to a child despite the child's status as trespasser, if he contributes to the child's injury by failing to comply with that duty. Similarly, it has been said that if the condition of the premises involves unreasonable risk of harm to children in view of their immaturity, and if the burden of rectifying the condition is slight in comparison with its usefulness and the magnitude of the risk, the attractive nuisance doctrine applies as an exception to the rule that no duty is owed to trespassers to put or keep the premises in reasonably safe condition. Still another statement of the doctrine is that one who maintains on his property a condition, instrumentality, machine, or other agency dangerous to children of tender years by reason of their inability to appreciate the peril, and of which he knows or should know, or realizes or should realize, that it involves unreasonable risk of death or serious bodily harm to such children, is under a duty to exercise reasonable care to protect them against the dangers of such agency, and is negligent if he fails to comply with this duty.''

The Restatement of Torts, section 339, states that in the presence of the following factors, the doctrine of attractive nuisance is applicable: ''A possessor of land is subject to

liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if

"(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and

"(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."

That this general rule is in effect in California is shown by the following cases, among others: *King* v. *Lennen,* 53 Cal. 2d 340, 343 [348 P.2d 98]; *Garcia* v. *Soogian,* 52 Cal.2d 107, 111 [338 P.2d 433]; *Reynolds* v. *Willson,* 51 Cal.2d 94, 105 [331 P.2d 48]; *Courtell* v. *McEachen,* 51 Cal.2d 448, 457 [334 P.2d 870], and *Woods* v. *City & County of San Francisco,* 148 Cal.App.2d 958 [307 P.2d 698].

All of the necessary requirements are present in the instant litigation. The warehouseman testified that children were frequently seen on the gate by him and that he communicated this fact to the owner of the premises; the structure was located near an elementary school and in a populated part of the city where the plaintiff and other children lived. The installation was both attractive and, in its then condition, dangerous (see 35 Cal.Jur.2d, Negligence, § 156, pp. 675-676).

The defendant owner, as a presumably reasonable man, should have known that the gate then involved a grave risk of injury to children. Because of their youth and their lack of knowledge, infants could not realize the risk involved in intermeddling with it, and it would have been a simple and uncostly procedure to padlock the gate in an open condition during the day.

It seems to this court that we here have a classical example of a situation calling for the application of the attractive nuisance doctrine. While the basic theory is often spoken of as the "turn-table doctrine" as a result of its genesis, it is a gross mistake to believe that it is limited to such railroad equipment. As a matter of fact, it has been applied in Cali-

fornia to many similar situations as is shown in 35 California Jurisprudence, Second Edition, Negligence, section 163, pages 680-681, where it is said:

"... It has been applied to a push car left unguarded and unlocked on a public street, a trailer and vat of boiling tar left unguarded in a city street, cars, tunnels, and stopes of an unguarded mine, an unguarded wagon attached to the rear of a house being moved down a public street, a tubular frame trailer stored on the defendant's property, dynamite caps left on a railroad right of way, a guy wire hanging from a pole, uncovered holes around sprinkler heads in an area frequented by children, and mattresses piled near an open window. And, although the doctrine does not ordinarily extend to railroad cars in motion, it has been applied to a train backed up slowly under such circumstances that the employees in charge were not visible to the injured child and were not in position to keep the rear cars and the track under their obesrvation."

The objections to certain language in the attractive nuisance instructions are captious rather than weighty. First, there is impatience with the phrase defining the duty of "one dealing with children" on the ground that the defendant had not specifically and knowingly made any contact with the children who played about his gate; here the phrase obviously refers to one who is in the position of the defendant; the owner of an attractive nuisance, in that sense, "deals" with the whole infantile world. The second objection is to that part of the applicable instructions that assumes that the plaintiff was injured while on the sidewalk; the evidence showed that the mother of plaintiff had sent her children, including plaintiff, to a neighborhood store near at hand; the girl was on the sidewalk, under the heavy gate, after it fell upon her; the testimony of Mr. Candoian that he saw plaintiff on the gate before it fell, while it may well have been true, did not necessarily bind the plaintiff. We believe that the jury was not misled by the form of the instruction.

The appellant also contends that it was erroneous for the court to give an instruction based on the res ipsa loquitur theory. One of the most recent cases in which the Supreme Court discusses res ipsa loquitur is *Fowler* v. *Seaton*, 61 Cal. 2d 681, 686 [39 Cal.Rptr. 881, 394 P.2d 697], where it is said: "... Generally, that doctrine applies 'where the accident is of such a nature that it can be said, in the light of past experience, that it probably was the result of negligence

by someone and that the defendant is probably the person who is responsible.' (*Siverson* v. *Weber*, 57 Cal.2d 834, 836 [22 Cal.Rptr. 337, 372 P.2d 97]; accord *Faulk* v. *Soberanes*, 56 Cal.2d 466, 470 [14 Cal.Rptr. 545, 363 P.2d 593]; *Zentz* v. *Coca Cola Bottling Co.*, 39 Cal.2d 436, 446 [247 P.2d 344].) Conversely, where no such weight of probabilities can be found, res ipsa loquitur does not apply. (*Tucker* v. *Lombardo*, 47 Cal.2d 457, 465 [303 P.2d 1041]; *Zentz* v. *Coca Cola Bottling Co., supra*, at p. 442; *LaPorte* v. *Houston*, 33 Cal.2d 167, 169 [199 P.2d 665].)

"One of the frequently quoted statements of the applicable rules is to be found in the opinion of Chief Justice Erle in *Scott* v. *London & St. Katherine Docks Co.* (1865) 3 H. & C. 596, quoted in Prosser on Torts (2d ed. 1955) section 42, at page 201, as follows: 'There must be reasonable evidence of negligence; but where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care.' "

█ In this case, of course, the injured child was much too young to be guilty of contributory negligence. In *Fowler* v. *Seaton, supra,* 61 Cal.2d 681, 690, it is said: "Of course, in most res ipsa cases, it is incumbent on the plaintiff to show that the actions of the plaintiff did not contribute to the injuries. *Here it was shown that plaintiff is of an age that, as a matter of law, she could not be guilty of contributory negligence,* and also that, as a result of shock caused by the accident, she cannot remember or communicate the cause of the accident. Under such circumstances, of course, she is entitled to the presumption that she exercised due care for her own safety. Thus this element of the doctrine was supplied." (Italics added.)

The appellant did not plead as a defense that the little girl was guilty of contributory negligence. Although the Hurricane Fence Company did so plead originally, the pretrial conference order not only omitted contributory negligence as an issue, but positively directed "affirmative defense of contributory negligence on the part of the minor plaintiff shall be stricken from the pleadings."

The recent case of *Brown* v. *Connolly*, 62 Cal.2d 391, 394 [42 Cal.Rptr. 324, 398 P.2d 596], which dealt with a 6-year-

old boy, held that a child is not entitled *by reason of age alone* to have the benefit of the disputable presumption *as evidence* that he took "ordinary care of his own concerns" (Code Civ. Proc., § 1963, subd. 4); it does not purport to do away with the firmly established rule applicable here that a child under 4 years of age is incapable of contributory negligence. (*Fowler* v. *Seaton, supra,* 61 Cal.2d 681, 690; *Crane* v. *Smith,* 23 Cal.2d 288, 295 [144 P.2d 356]; *Greene* v. *Watts,* 210 Cal.App.2d 103, 105 [26 Cal.Rptr. 334]; *Morningred* v. *Golden State Co.,* 196 Cal.App.2d 130, 137 [16 Cal. Rptr. 219]; *Untalan* v. *Glass,* 190 Cal.App.2d 474, 476 [12 Cal.Rptr. 1]; *Christian* v. *Goodwin,* 188 Cal.App.2d 650 [10 Cal.Rptr. 507]; *Morales* v. *Thompson,* 171 Cal.App.2d 405, 407-408 [340 P.2d 700]; *Ellis* v. *D'Angelo,* 116 Cal.App.2d 310, 315-317 [253 P.2d 675].)

The appellant contends that the instructions on res ipsa loquitur were improperly given: (1) because it is claimed that the situation was not one that would justify the application of the doctrine, and (2) that even if an instruction on the subject were given, it should have been phrased not as an absolute, but as a qualified, rule to be applied only if the jury found that the facts of the case justified it. ▮ It is our view that the factual situation shown by the evidence required the giving of the absolute res ipsa loquitur instruction, applicable as a matter of law; as pointed out in her brief, the plaintiff properly contends that the following facts must be considered as leading to that conclusion:

1) It is common knowledge that a 400-pound gate in a chain-link fence, located at an active business establishment, does not normally fall over in the absence of negligence on the part of someone;

2) The uncontradicted evidence is that the gate was installed by the defendant, Ralph Barker, doing business as Hurricane Fence Company, and that it was owned by the defendant, Fresno Distributing Co., and was under the exclusive control of that defendant after its installation;

3) There was evidence, without conflict, that, if properly installed and in normal condition, the gate could not be made to fall even by a strong man;

4) The evidence established that even if the normal keepers were not on the gate and it was merely on its wheels, it would be impossible for it to fall over by reason of the fact that a three-year-old child may have been riding on it.

In these circumstances, it would seem that the res ipsa loquitur doctrine was applicable and that the appellant owed the duty of going forward with evidence to overcome the commonsense inference that it was negligent in the absence of such additional showing.

As stated in *Fowler* v. *Seaton, supra,* 61 Cal.2d 681, 687: ''. . . Res ipsa loquitur may apply where the cause of the injury is a mystery, if there is a reasonable and logical inference that defendant was negligent, and that such negligence caused the injury. (Prosser on Torts, *supra* [(2d ed. 1955) § 42] at page 204.)''

The complaint that the jury was misinstructed as to proximate cause rests on the fact that the court gave a portion of the charge on this subject based upon the case of *Summers* v. *Tice,* 33 Cal.2d 80, 86 [199 P.2d 1, 5 A.L.R.2d 91], in the following words: ''If you find that the plaintiff sustained an injury as a proximate result of the acts of the defendants, or either of them, and that each of the defendants was negligent, then you must find against each of the defendants on the issues of negligence and proximate cause unless you find from a preponderance of the evidence that the negligence of one defendant did not operate as a proximate cause of the injury or part thereof. Under the circumstances, the burden rests upon each defendant to prove that his negligence was not a proximate cause of plaintiff's injury.''

The instruction was hypothetically wrong in that the burden of proof at all times with respect to proximate cause was upon the plaintiff, but we conclude that the error was not prejudicial within the meaning of section 4½, article VI of the Constitution. The jury was correctly instructed with respect to the burden of proof of proximate cause more than once. The following correct instructions were given by the court on the subject as shown by the transcript: ''The issues to be determined by you in this case are these:

''First: Were the defendants, or either of them, negligent? . . .

''Was that negligence the proximate cause of any injury to the plaintiff?

''If you answer that question in the negative, plaintiff is not entitled to recover, but if you answer it in the affirmative, you then will find what damage plaintiff thus has been caused to suffer. . . .''

''In this action, the plaintiff has the burden of proving the following issues:

"First, negligence of the defendants, or either of them.

"Second, that such negligence was a proximate cause of the injury complained of."

"The proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred. It is the efficient cause —the one that necessarily sets in operation the factors that accomplish the injury. It may operate directly or through intermediate agencies or through conditions created by such agencies."

"This does not mean that the law seeks and recognizes only one proximate cause of an injury, consisting of only one factor, one act, one element of circumstance, or the conduct of only one person. To the contrary, the acts and omissions of two or more persons may work concurrently as the efficient cause of any injury, and in such a case, each of the participating acts or omissions is regarded in law as a proximate cause. To give rise to liability, however, any such proximate cause must have consisted of negligent conduct."

"When the negligent acts or omissions of two or more persons, whether committed independently or in the course of jointly directed conduct, contribute concurrently and as proximate causes of the injury of another, each of such persons is liable. This is true regardless of the relative degree of contribution."

Furthermore, we must keep in mind that because the res ipsa loquitur doctrine was applicable to the case, the duty fell upon the defendant to go forward with evidence that negligence on its part was not a proximate cause of the damages.

It does not appear to us that there would have been any different result if the erroneous instruction had not been given. (*Chance* v. *Lawry's, Inc.*, 58 Cal.2d 368, 382 [24 Cal. Rptr. 209, 374 P.2d 185]; *Taylor* v. *Pacific Container Co.*, 148 Cal.App.2d 505, 513 [306 P.2d 1049].) The unanimous verdict of the jury should not be set aside for this minor error.

Summarizing, the evidence was amply sufficient to warrant the judgment in favor of the plaintiff as against the Fresno Distributing Co. and there were no prejudicial errors in the instructions which would justify a reversal.

The judgment is affirmed.

Brown (R. M.), J., and Stone, J., concurred.