[Civ. No. 30489. Second Dist., Div. Five. Feb. 7, 1968.]

MICHAEL CASAS, a Minor, etc., et al., Plaintiffs and Appellants, v. MAULHARDT BUICK, INC., et al., Defendants and Respondents.

694

Heily & Blase and Bruce H. White for Plaintiffs and Appellants.

Barnes, Benton, Orr, Duval & Buckingham and Edwin Duval for Defendants and Respondents.

HUFSTEDLER, J.—Plaintiffs, Michael Casas, a minor,

and his father, Stanley Casas, appeal from a judgment in favor of defendants, Oscar Rodriguez and Maulhardt Buick, Inc. (''Maulhardt''), entered after a jury verdict for the defendants. Michael, through his guardian ad litem, sought damages for personal injuries he sustained when he was run over by a car driven by Rodriguez, an employee of Maulhardt acting within the scope of his employment. Michael's father joined the action to recover medical expenses he had incurred on Michael's behalf.[1]

The case has been tried twice. The first trial resulted in a defense verdict, and the trial court granted plaintiffs' motion for a new trial on the ground of the insufficiency of the evidence to sustain the verdict. The case was retried, and a second defense verdict was rendered. Plaintiffs moved unsuccessfully for a new trial, and this appeal followed.[2] On appeal plaintiffs claim that the court prejudicially erred in giving certain instructions to the jury affecting liability.

*Summary of the Evidence*

On March 15, 1962, at about 4:30 p.m., 4-year-old Michael was struck by an automobile driven by Maulhardt's employee, Rodriguez, as Michael was attempting to cross McKinley Street in the City of Oxnard. Michael sustained severe and permanent injuries.

Rodriguez gave the following version of the accident: He testified that he never saw Michael until after the accident when he removed the child from under the middle of his car. The first time Rodriguez knew that there was a collision was when he heard a bump on the front of his car. He thought he had hit a dog or a cat until a woman (Mrs. Munoz), seeing Michael under the car, screamed, ''You killed the boy.'' He applied the brakes immediately following the collision, and the automobile stopped somewhere between 20 to 50 feet thereafter. Rodriguez entered McKinley Street from Third Street. Just before the accident he was driving northerly towards First Street at a speed of between 15 to 20 miles per hour. He saw no traffic and no children. Rodriguez was familiar with McKinley, and he knew that children played on McKinley Street between Second and First. He also knew that

---

[1] The court on its own motion has augmented the record on appeal to include the clerk's transcript prepared following the first trial and defectively designated by plaintiffs as part of the record on this appeal.

[2] Plaintiffs appeal from both the judgment and the order denying plaintiffs' motion for a new trial. The order denying the plaintiffs' motion for a new trial is a nonappealable order. (*Rodriguez* v. *Barnett* (1959) 52 Cal.2d 154, 156 [338 P.2d 907].)

there was a likelihood that some child might run out in front of him as he was driving along McKinley.

On the afternoon of the accident Michael's mother left him, his 8-year-old brother, Stanley, Jr., and his sister, Grace, with Michael's maternal grandmother, who lived on the easterly side of McKinley. McKinley is a residential street flanked by modest homes, some of them with fenced yards and others without fencing. Michael's grandmother's yard was not fenced. Across McKinley from Michael's grandmother's home was the Munoz residence. Michael and his brother had been playing with the Munoz children in the Munoz yard shortly before the accident. While Grace, who was almost 14, was in her grandmother's kitchen, Michael came in to get a carrot. He took the carrot and was eating it as he went out of the house. Between two and four minutes after Michael left the house Grace heard Michael scream. Grace went outside and saw Michael lying on the sidewalk, her grandmother was fainting, and "there were people all over the place."

No one saw Rodriguez's car hit Michael although Mrs. Munoz came into her yard in time to see Michael being rolled under Rodriguez's car before it stopped. The physical evidence observed by an investigating police officer showed that Rodriguez's car was stopped 26 feet south of the south edge of First Street and 10 feet west of the east curb line of McKinley. A carrot was caught in the grille in the front of Rodriguez's automobile. Blood, skin, hair and pieces of carrot were found approximately 13 feet to the rear of the stopped automobile in an area about 12 to 15 feet from the easterly curb of McKinley and about 70 feet from its intersection with First Street. There was blood on the inner side of one of the wheels on the left side of the vehicle. No damage was observed to the vehicle itself. The investigating officer was of the opinion that the point of impact on the street was marked by the pieces of hair, skin and carrot. There was other opinion evidence that was in some respects contradictory concerning the point of impact.

The day of the accident was dry and clear. The evidence was conflicting upon the question whether there were any automobiles parked along the easterly curb of McKinley which might have interfered with Rodriguez's unobstructed view of that side of the street as he drove up McKinley. After the accident two automobiles were observed parked along the curb of McKinley some distance south of the area of impact fixed by the investigating officer. The distance from the left

fender of the northernmost parked automobile to the point of impact was somewhere between 49 and 60 feet.

Michael did not testify at the first trial. Michael, who was 7 years old at the time the case was retried, testified on retrial that he remembered "walking on his knees" across the street, holding a carrot in his right hand. He remembered nothing else about the accident.

### Error in Negligence Instructions

There was one critical issue in the plaintiffs' case as it was presented: Was Rodriguez negligent in failing to maintain a proper lookout, knowing that children played on McKinley between Second and First? Rodriguez testified that he never saw the child until after the collision. If the jury believed Rodriguez's testimony on that point, it had to decide why he did not see the child. Was it because Rodriguez was not maintaining the proper vigilance? Or was it because, under the circumstances, Michael was not visible to one exercising due care?

Rodriguez's testimony about where and how he was looking as he drove on McKinley was such that the jury might have disbelieved it altogether or, perhaps, credited any one of the several versions he told. Rodriguez testified variously that: he was looking straight ahead, he was looking to his left and right, he was not looking for parked cars, he saw no cars parked, and he did not remember where he was looking. ▮ Rodriguez testified that he knew children played on McKinley, and he also knew that it was likely that a child might run out in front of him. He was obliged to exercise ordinary care under the circumstances to discover the presence of children who he knew could be in the street (*Grant* v. *Mueller* (1958) 160 Cal.App.2d 804, 807 [325 P.2d 680]) and he must exercise greater care for the safety of the children than he would for adults. (E.g., *Harris* v. *Union Ice Products* (1959) 176 Cal. App.2d 132, 136 [1 Cal.Rptr. 287]; *Frederiksen* v. *Costner* (1950) 99 Cal.App.2d 453, 456 [221 P.2d 1008]; *Conroy* v. *Perez* (1964) 64 Cal.App.2d 217, 224 [148 P.2d 680].)

▮ The trial court gave the jury general instructions on negligence, including BAJI Nos. 101, 101-B, 101-C, 102, 102-A, 148 and 151. The plaintiffs contend that the court erred in refusing two instructions they requested: (1) BAJI No. 140 (looking and not seeing) and (2) an instruction drawn by the plaintiffs, stating, "One who does not see that which is clearly visible and should have been seen by one exercising ordinary

care, as a result of which a collision occurs, is guilty of negligence as a matter of law.''

BAJI No. 140[3] has been approved where the instruction has been requested by both parties (*Daun* v. *Truax* (1961) 56 Cal.2d 647, 651 [16 Cal.Rptr. 351, 365 P.2d 407]) and criticized as argumentative and, to the extent that it accurately reflects the evidence in the particular case, as stating merely the commonplace. (E.g., *DeGeorge* v. *Crimmins* (1967) 254 Cal.App.2d 544, 545 [62 Cal.Rptr. 394]; *Hom* v. *Clark* (1963) 221 Cal.App.2d 622, 647-649 [35 Cal.Rptr. 11].) The failure to give the instruction was not prejudicial error. (E.g., *Hom* v. *Clark, supra,* 221 Cal.App.2d at pp. 647-648; *Abney* v. *Coalwell* (1962) 200 Cal.App.2d 892, 899 [19 Cal. Rptr. 846]; *Callahan* v. *Theodore* (1956) 145 Cal.App.2d 336, 339 [302 P.2d 333].)

The court did not err in refusing to give the second instruction. The instruction was based on the decision in *Beck* v. *Kessler* (1965) 235 Cal.App.2d 331 [45 Cal.Rptr. 237]. In the *Beck* case there was uncontradicted evidence by the defendant driver that he saw the taxicab in which the plaintiffs were riding in time to avoid the collision. In this case one of the major questions for the jury to resolve was whether under all of the circumstances the defendant could have seen Michael if he were keeping a proper lookout. Had the requested instruction been given, it would have been error. (*Cf. Abney* v. *Coalwell, supra,* 200 Cal.App.2d at p. 899.)

At the defendant's request the court gave BAJI No. 140.1: ''General human experience justifies the inference that when one looks in the direction of an object clearly visible, he sees it, and that when he listens, he hears that which is clearly audible. When there is evidence to the effect that one did look, but did not see that which was in plain sight, or that he listened, but did not hear that which he could have heard in the exercise of ordinary care, if such evidence is altogether true, it follows that the person was negligently inattentive. However such evidence may not be altogether true.

''*The person in question may not have looked* or he may not

---

[3] ''General human experience justifies the inference that when one looks in the direction of an object clearly visible, he sees it, and that when he listens, he hears that which is clearly audible. When there is evidence to the effect that one did look, but did not see that which was in plain sight, or that he listened, but did not hear that which he could have heard in the exercise of ordinary care, it follows that either some part of such evidence is untrue or the person was negligently inattentive.''

have listened, or he may both have looked and seen or may both have listened and heard; or circumstances may have existed that prevented an object which otherwise would have been in plain sight from being so, or that prevented a sound which otherwise would have been audible from being so, or that prevented the person in question, and would have prevented a person of ordinary prudence in the same situation, from reacting to his perceptions as he otherwise would have done.

"You must resolve the conflicts, if any, that exist in the evidence in respect to these matters, drawing such inferences as seem to you to be reasonable." (Italics added.)

The first paragraph of BAJI No. 140.1 is similar to BAJI No. 140 and it is subject to the same criticisms, in a harsher key, as those leveled at BAJI No. 140. The second paragraph of BAJI No. 140.1 cannot be dealt with as charitably as the first. It purports to be an explanation of the circumstances in which the first paragraph does not apply. A person who does not look at all is negligently inattentive. The italicized words imply that the failure to look is an exception to the principle of negligent inattentiveness stated in the first paragraph. The implication is obviously wrong. The observation "circumstances may have existed that prevented an object which otherwise would have been in plain sight from being so" is useless: a jury does not need to be told that an object which cannot be seen is not "in plain sight." The final comments in the second paragraph are uninformative if not entirely unintelligible. What circumstances is the court asking the jury to consider which would prevent one from seeing a plainly visible object? What circumstances is the jury supposed to consider which might prevent a person from reacting to whatever he saw?

At the defendants' request the court also gave the following two instructions: (1) "A person who, himself, is exercising ordinary care has a right to make and rely on a certain assumption concerning the conduct of others, if the circumstances do not inform him or cause him to believe in the contrary, and would not so inform or cause a reasonably prudent person in his position to so believe. That assumption is that another person whose conduct might come into conflict with, or might affect or be related to, his own is possessed of the normal faculties of sight and hearing and of ordinary intelligence *of like persons*, and that such other person is using and will use those faculties in the manner of like per-

sons in the *exercise of ordinary care for his own and other's safety.*" (Italics added.)

(2) "Every person who, himself, is exercising ordinary care, has a right to assume that every other person will perform his duty and obey the law, and in the absence of reasonable cause for thinking otherwise, it is not negligence for such a person to assume that he is not exposed to danger which can come to him only from a violation of law or duty by another person."

■  The court erred prejudicially in giving those instructions under the circumstances of this case. Both instructions were requested and were given to the jury as a guide in judging Rodriguez's conduct. The first instruction bears on its face the notation that it was based upon BAJI No. 138-C "modified to relate to a child." The court's "modification" consisted only of adding to BAJI No. 138-C the words "of like persons." The instruction told the jury that Rodriguez was entitled to assume that Michael had the intelligence and the perception to exercise ordinary care for his own safety. The modification, if the jury had been able to grasp its subtlety, meant "like other four-year-old children." Infants aged four years one month are incapable as a matter of law of exercising ordinary care for their own or others' safety, and Rodriguez could not assume to the contrary. (*Morningred* v. *Golden State Co.* (1961) 196 Cal.App.2d 130, 137 [16 Cal. Rptr. 219]; *Christian* v. *Goodwin* (1961) 188 Cal.App.2d 650, 654-655 [10 Cal.Rptr. 507]; see also *Fowler* v. *Seaton* (1964) 61 Cal.2d 681, 687-688 [39 Cal.Rptr. 881, 394 P.2d 697]; *Walker* v. *Fresno Distributing Co.* (1965) 233 Cal.App.2d 840, 847-848 [44 Cal.Rptr. 68].)[4]

■  The second instruction told the jury that Rodriguez, if he were otherwise exercising ordinary care, could assume that Michael would obey the law. Rodriguez could not assume that a child of Michael's age or younger would obey the law. The quantum of care to be exercised by young children does not include the legislatively adopted standards of care

---

[4]Compare *Koenig* v. *Coe* (1958) 163 Cal.App.2d 429 [329 P.2d 721], holding that the court prejudicially erred in giving BAJI No. 138, reciting that one who is exercising ordinary care has a right to assume that others are performing their duty under the law and to act upon that assumption, without also giving the exceptions appearing in brackets in the instruction where there is evidence from which the jury could have found that it was or would have been apparent to a reasonably prudent person that the other person was not going to perform his duty or obey the law.

intended for adults, even if the child is old enough to be capable of negligence. (*Cf. Daun* v. *Truax, supra,* 56 Cal.2d 647, 654 (child five years eight months old); *Cummings* v. *County of Los Angeles* (1961) 56 Cal.2d 258, 263 [14 Cal. Rptr. 668, 363 P.2d 900] ("It is absurd to presume that a child of 7, as a matter of law, knows all the standards of conduct set forth in the Vehicle Code.") ; *Brown* v. *Connolly* (1962) 206 Cal.App.2d 582, 587 [24 Cal.Rptr. 57] (child six years one month old).)

■ The error in giving these instructions was not cured, as the defendants argue, by the instruction earlier given by the court that Michael was not capable of contributory negligence or by the later instruction (BAJI No. 148) concerning the greater degree of care which must be exercised for the protection and safety of children. Assuming that the jury could effectively translate the definition of contributory negligence[5] into its component parts of negligence and proximate cause and would understand that the incapability of Michael to be contributorily negligent also meant that he could not be negligent and that the negligence of others was not imputable to him, the jury was nevertheless given instructions which were inherently contradictory.

*Garibaldi* v. *Borchers Bros.* (1957) 48 Cal.2d 283, 291-292 [309 P.2d 23], upon which defendants rely to support their contention that the instructions were proper, is not in point. The eight-and-one-half-year-old plaintiff in *Garibaldi* was legally capable of negligence, the instruction given was BAJI No. 138, and the court clearly explained the exceptions to the general rule first stated in the instruction. *Brown* v. *Connolly* (1965) 62 Cal.2d 391, 394 [42 Cal.Rptr. 324, 398 P.2d 596, 11 A.L.R.3d 1348], is likewise distinguishable. The case holds that the 6-year-old plaintiff was not entitled to the presumption of due care solely because of his age. As the court observed in *Walker* v. *Fresno Distributing Co., supra,* 233 Cal.App.2d at p. 848, the decision in *Brown* did not impair the well settled rule that 4-year-olds are incapable of negligence.

■ Equally untenable is the defendants' argument that the instructions were proper because the jury could have understood them to refer to the negligent conduct of someone other than Michael, such as his relatives. It is conceivable that

---

[5]The court had earlier instructed the jury in accordance with BAJI No. 103.1 and BAJI No. 146-H (modified). These instructions were erroneous for reasons hereinafter discussed.

the jury might have so construed those instructions, although they were neither proposed nor given for that purpose. The instructions, however, were not warranted by the evidence. Rodriguez was not entitled to make the assumption that persons in charge of Michael would keep him out of the street because his previous experience on McKinley informed him to the contrary: he knew that children on McKinley played in the street, and his testimony that he saw no children there on the day of the accident does not eradicate his prior knowledge. (*Cf. Koenig* v. *Coe, supra,* 163 Cal.App.2d at pp. 433-434.)

*Error in Contributory Negligence Instructions*

At the defendants' request the court gave the following instructions on contributory negligence:

"Contributory negligence is negligence on the part of a person who thereafter becomes a claimant for damages for alleged injury to his person or his property *or negligence on the part of someone which, under the law, is imputed to that claimant* and which negligence, concurring with the negligence of another, contributes in some degree in proximately causing the damage of which the claimant thereafter complains.

"One who is guilty of contributory negligence *or one to whom such negligence is imputed under the law* may not recover from another for the injury suffered." (Italics added.) (BAJI No. 103.1.)

"Concerning the defense of contributory negligence that has been raised in this case, I instruct you that the law conclusively presumes that a child of the age of the plaintiff child, Michael Casas, is incapable of contributory negligence. However, the fact that this defense is not available *against* Michael Casas does not in itself require you to find that someone else was negligent.

"You need consider the defense of contributory negligence only in respect to the conduct of the plaintiff parent. If he did not use ordinary care in the exercise of his parental duties as to control over, instructions and warnings to, discipline, care of supervision of, said child, and if any negligence on the part of said parent was a proximate cause of the injury to the child of which he here complains, then said parent may not recover in this action; but such negligence, if any, on the part of said parent may not be imputed to the child and shall not bar recovery by said child, if otherwise he is entitled to recover." (BAJI No. 146-H (modified).)

The jury was given no guidance in these instructions or in any other instruction in determining whether any of Michael's relatives, except his father, were negligent, and it was given no instruction about which relative's negligence, if any, could be imputed to Michael's father. The jury was invited to browse freely through the Casas family and to attribute any negligence they might find to Mr. Casas.

If Michael's mother was negligent, her negligence is imputed to her husband because his recovery would be community property, and, absent the imputation, she could be unjustly enriched. (*Cf. Flores* v. *Brown* (1952) 39 Cal.2d 622, 630 [248 P.2d 922]; see *Crane* v. *Smith* (1943) 23 Cal.2d 288, 301 [144 P.2d 356].) [6]

Vicarious liability for acts of other members of the family, however, must be founded on proof of true agency. "[I]t has been settled that the family relationship standing alone is not sufficient to convert family activities into joint enterprises for purposes of imputing negligence." (*Flores* v. *Brown, supra,* 39 Cal.2d 622, 630. Accord: *Kesler* v. *Pabst* (1954) 43 Cal.2d 254, 259 [273 P.2d 257].)

Defendants contend that Michael's grandmother's negligence, if any, is imputable to Mr. Casas because she was baby-sitting for him. If Mr. Casas hired his mother-in-law to take care of Michael, he would be liable for her conduct because she would be his employee. (*Welch* v. *Gardner* (1960) 187 Cal.App.2d 104, 114 [9 Cal.Rptr. 453]; *Springer* v. *Sodestrom* (1942) 54 Cal.App.2d 704, 709 [129 P.2d 499].) However, familial services gratuitously performed do not fall into the employment category. In *Edwards* v. *Freeman* (1949) 34 Cal.2d 589, 594 [212 P.2d 883], the court held that reversible error was committed in instructing the jury that the negligence of the plaintiff's son while driving his mother at her request to the doctor was imputable to the mother. The court said, "[W]here the evidence shows no more than a friendly or filial service, gratuitously rendered, it was error to submit the issue of imputed negligence to the jury and the error was clearly prejudicial because the inadequate and confusing instruction on the subject of agency at the least

[6]Civil Code, section 163.5, making damages for personal injuries of a spouse the separate property of the injured person, does not apply to convert damages for wrongful death of a child or medical expenses incurred for the child into separate property. (*Premo* v. *Grigg* (1965) 237 Cal.App.2d 192, 199-200 [46 Cal.Rptr. 683]; *Cervantes* v. *Maco Gas Co.* (1960) 177 Cal.App.2d 246, 250 [2 Cal.Rptr. 75].)

*permitted* the jury to find such a relation . . . from the mere 'instance and request' of plaintiff.'' [Italics in the original.] (34 Cal.2d at p. 594.) There was no evidence that Michael's maternal grandmother or his sister, Grace, was performing anything other than gratuitous familial services in tending Michael.[7]

■ Defendants also contend that the relationship of master and servant necessarily existed between Mr. Casas and Grace because she was legally subject to his direction and control and he was entitled to her services. (Civ. Code, § 197.) A child is not his parents' servant simply because of the family relationship. ■ A parent is not generally liable for the torts of his minor child. (E.g., *Ellis* v. *D'Angelo* (1953) 116 Cal.App.2d 310 [253 P.2d 675].) Of course, a child may become an agent for his parent upon proof of facts which would be sufficient to establish an agency between the parent and a third person. The record in this case falls substantially short of proof of any agency between Grace and her father.

■ Nonimputable negligence of members of Michael's family may be relevant and admissible on the issues of actual and proximate causation (*Akins* v. *County of Sonoma* (1967) 67 Cal.2d 185 at pp. 198-200 [60 Cal.Rptr. 499, 430 P.2d 57]), but the jury should be clearly informed about the limited purpose for which such evidence is received.

The judgment is reversed; the attempted appeal from the order denying plaintiffs' motion for a new trial is dismissed.

Stephens, J., and Aiso, J. pro tem.,* concurred.

A petition for a rehearing was denied March 6, 1968.

---

[7]In *Gavin* v. *Watt* (1956) 144 Cal.App.2d 238 [300 P.2d 842], the court assumed that the negligence of the child's grandmother was imputable to his father. No issue was raised concerning the basis for vicarious liability, and the point is not discussed.

*Assigned by the Chairman of the Judicial Council.